J-S15015-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: M.E.R., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: N.S.R., MOTHER | No. 1342 EDA 2015 |

Appeal from the Decree entered April 8, 2015,
in the Court of Common Pleas of Philadelphia County, Family Court,
at No(s): CP-51-AP-0000162-2015

| | |
|---|---|
| IN THE INTEREST OF: E.E.R., JR., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: N.S.R., MOTHER | No. 1472 EDA 2015 |

Appeal from the Decree entered April 8, 2015,
in the Court of Common Pleas of Philadelphia County, Family Court,
at No(s): CP-51-AP-0000161-2015

| | |
|---|---|
| IN THE INTEREST OF: M.E.R., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: N.S.R., MOTHER | No. 1342 EDA 2015 |

Appeal from the Order entered April 8, 2015,
in the Court of Common Pleas of Philadelphia County, Family Court,
at No(s): CP-51-DP-0001976-2013

J-S15015-16

IN THE INTEREST OF: E.E.R., J.R., A | IN THE SUPERIOR COURT OF
MINOR | PENNSYLVANIA

APPEAL OF: N.S.R., MOTHER | No. 1472 EDA 2015

Appeal from the Order entered April 8, 2015,
in the Court of Common Pleas of Philadelphia County, Family Court,
at No(s): CP-51-DP-0001891-2013

BEFORE: BENDER, P.J.E, OLSON, and PLATT,[*] JJ.

MEMORANDUM BY BENDER, P.J.E.: **FILED MARCH 04, 2016**

N.S.R. ("Mother") appeals from the decrees entered April 8, 2015, which involuntarily terminated her parental rights to her minor sons, M.E.R., born in June of 2006, and E.E.R., Jr., born in January of 2011 (collectively, "the Children"). Mother also appeals from the orders entered that same day, which changed the Children's permanency goals to adoption.[1, 2] After careful review, we affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] The trial court entered a separate decree which terminated the parental rights of E.E.R., Jr.'s, unknown father. During the termination hearing, the father of M.E.R. was identified as a man named A.C. N.T., 4/8/2015, at 6, 19. At the conclusion of the termination hearing, the court indicated that it would terminate A.C.'s parental rights to M.E.R. *Id.* at 50. The trial court docket also indicates that the court entered a decree terminating A.C.'s parental rights. However, the certified record does not contain a decree terminating A.C.'s rights, but instead contains a decree terminating the rights of M.E.R.'s "unknown father." Neither A.C., nor any unknown father, is a party to the instant appeal.

- 2 -

The Children were removed from Mother's care in September of 2013, due to Mother's medical neglect of E.E.R., Jr., and her lack of appropriate housing. N.T., 4/8/2015, at 8. Mother also was experiencing mental health and drug and alcohol issues. *Id.* According to the dependency petitions filed by the Philadelphia Department of Human Services ("DHS"), Mother repeatedly failed to bring E.E.R., Jr., to his medical appointments, and failed to bring E.E.R., Jr., to the emergency room when directed to do so by medical personnel.[3] Dependency Petition for E.E.R., Jr. (Statement of Facts), 9/19/2013, at ¶¶ d-e. There also was "a lot of traffic coming in and out" of Mother's home, and the home was infested with roaches and flies. Dependency Petition for M.E.R. (Statement of Facts), 10/3/2013, at ¶ d. E.E.R., Jr., was adjudicated dependent on September 25, 2013, and M.E.R. was adjudicated dependent on October 10, 2013.

On March 24, 2015, DHS filed petitions to terminate Mother's parental rights to the Children involuntarily. DHS also filed petitions to change the Children's permanency goals to adoption. A termination and goal change hearing was held on April 8, 2015. Following the hearing, the trial court entered its decrees terminating Mother's parental rights, as well as its orders

---

[2] We note that the certified record in this case was originally due on June 8, 2015. However, this Court did not receive the record from the trial court until well past the due date, on October 1, 2015. As a result, the briefing schedule in this matter was delayed by nearly four months.

[3] E.E.R., Jr., suffers from gastrointestinal issues, and receives nightly feedings using an "NG" tube. N.T., 4/8/2015, at 14, 18.

changing the Children's permanency goals. Mother timely filed notices of appeal on May 7, 2015, along with concise statements of errors complained of on appeal.[4]

Mother now raises the following claim for our review. "Did [DHS] sustain its burden that Mother's parental rights should be terminated?" Mother's brief at 5.[5]

We consider Mother's claim mindful of our well-settled standard of review.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an

---

[4] Mother filed one notice of appeal and concise statement of errors complained of on appeal per child, each of which included the docket numbers for both the termination and change of goal matters. We note that it was improper for Mother to file a single notice of appeal as to each child, rather than filing a notice of appeal as to each termination decree and goal change order. *See* Pa.R.A.P. 341, Note ("Where, however, one or more orders resolves issues arising on more than one docket or relating to more than one judgment, separate notices of appeal must be filed."). However, we decline to quash Mother's appeal, as we discern no prejudice stemming from her procedural misstep.

[5] While Mother purports to appeal from the orders changing the Children's permanency goals to adoption, her brief on appeal contains no substantive discussion of this issue. Accordingly, Mother has failed to preserve any challenge to the goal change orders for our review, and we address only the decrees terminating Mother's parental rights. *See In re W.H.*, 25 A.3d 330, 339 n.3 (Pa. Super. 2011), *appeal denied*, 24 A.3d 364 (Pa. 2011) (quoting *In re A.C.*, 991 A.2d 884, 897 (Pa. Super. 2010)) ("'[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived.'").

abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S. §§ 2101-2938, which requires a bifurcated analysis.

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

In this case, the trial court terminated Mother's parental rights pursuant to Sections 2511(a)(1), (2), (5), (8), and (b). We need only agree with the trial court as to any one subsection of Section 2511(a), as well as Section 2511(b), in order to affirm. *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*), *appeal denied*, 863 A.2d 1141 (Pa. 2004). Here,

we analyze the court's decision to terminate under Sections 2511(a)(2) and

(b), which provide as follows.

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> ***
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> ***
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(2), (b).

We first address whether the trial court abused its discretion by

terminating Mother's parental rights pursuant to Section 2511(a)(2).

> In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003) (citation omitted). "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002) (citations omitted).

Instantly, the trial court found that Mother has demonstrated a repeated and continued incapacity and refusal to parent the Children, and that Mother will not be able to resolve this incapacity and refusal in the near future. Trial Court Opinion, 9/29/2015, at 10-11. The court emphasized Mother's failure to comply with her Family Service Plan (FSP) objectives, including Mother's failure to visit with the Children. *Id.* Mother argues that she is addressing her housing, mental health, and drug and alcohol problems, and that these problems will be resolved "within the foreseeable future." Mother's brief at 10.

After a thorough review of the record in this matter, we conclude that the trial court did not abuse its discretion by involuntarily terminating Mother's parental rights to the Children. During the termination hearing, DHS presented the testimony of Bethany Christian Services caseworker, Rachael Lee. Ms. Lee testified that she was assigned to this matter in November of 2013, and that she remained the Children's caseworker until December 30, 2014. N.T., 4/8/2015, at 7-8. At that time, Ms. Lee became

the supervisor monitoring the case. *Id.* at 8. On February 26, 2015, the matter was transferred to a Community Umbrella Agency. *Id.*

Ms. Lee explained that an Individual Service Plan was prepared for Mother, and that Mother's objectives were to "visit with the [C]hildren once a week, attend all of [E.E.R., Jr.'s,]" medical appointments, drug and alcohol, mental health, housing, and parenting classes. *Id.* at 9. Ms. Lee testified that Mother participated in only eleven of seventy-six visits with the Children between November of 2013 and December of 2014. *Id.* at 10-12. Mother did not attend any visits with the Children between December of 2014 and March of 2015. *Id.* at 13. Mother has not received the medical training necessary to care for E.E.R., Jr. *Id.* at 18.

Ms. Lee further testified that, to her knowledge, Mother has not participated consistently in drug and alcohol programs, nor has she participated in a mental health program or completed a parenting capacity evaluation. *Id.* at 9-10, 17-18. Mother did not consistently participate in drug screens, and she tested positive for "Benzos and Opiates" in August of 2014. *Id.* Ms. Lee noted that Mother also appeared to be under the influence during a recent court hearing, and she refused to take a drug test. *Id.* at 18. Mother did attend an inpatient drug treatment program in January of 2015. *Id.* at 22. Ms. Lee stated that Mother suffers from a cognitive impairment, and that Mother's behavioral health consultant reports

that she has failed to make contact. *Id.* at 20-21, 25. Mother continues to lack appropriate housing. *Id.* at 17.

The trial court also heard the testimony of DHS social worker, Cecilia Nesbit. The testimony of Ms. Nesbit largely mirrored that of Ms. Lee. Ms. Nesbit testified that DHS prepared a series of FSP objectives for Mother, which were "to attend parenting classes, to locate civil housing, to be involved with D&A and mental health treatment, to maintain contact with the [C]hildren though visitation, to complete at least five job applications, [and] to sign consent for medical concerns…." *Id.* at 30. Ms. Nesbit confirmed that Mother continued to lack an appropriate residence at the time this case was transferred to the Community Umbrella Agency. *Id.* at 32. Ms. Nesbit attempted to assist Mother with housing, but Mother claimed that "she didn't need any help with housing because she was on Section 8 and that she was waiting to get back on Section 8 and that she was going to call them." *Id.* at 34, 38-39. Mother also had not completed parenting courses, and she did not provide documentation indicating that she was employed, or that she was involved in mental health or drug and alcohol treatment. *Id.* at 32. With respect to Mother's cognitive impairment, Ms. Nesbit noted that she spoke with Mother's mental health case manager, and that the case manager reported that "sometimes [Mother] was available and sometimes she wasn't." *Id.* at 42-43. Mother never followed through with a drug screening assessment, or with drug screens. *Id.* at 32-33.

Finally, DHS presented the testimony of Bethany Christian Services caseworker, Ann Schlonecker. Ms. Schlonecker explained that she was the caseworker assigned to this matter from approximately December of 2014 until February of 2015. *Id.* at 43. During this time, Mother did not visit with the Children. *Id.* at 44. However, Mother did make several phone calls to Ms. Schlonecker. *Id.* During one of these phone calls, Mother reported that she was participating in drug and alcohol treatment. *Id.*

Accordingly, the record supports the conclusion of the trial court that Mother has demonstrated a repeated and continued incapacity and refusal to provide the Children with essential parental care, control, or subsistence. Moreover, Mother cannot, or will not, remedy her parental incapacity. Since the Children were placed in foster care in September of 2013, Mother has done almost nothing to make herself capable of caring for the Children. Most notably, Mother attended only eleven of seventy-six visits with the Children between November of 2013 and December of 2014, and she did not attend any visits between December of 2014 and March of 2015. Mother continues to lack an appropriate residence, and she tested positive for illegal drugs as recently as August of 2014. It was proper for the court to conclude that the Children should no longer be denied permanency. *See M.E.P.,* 825 A.2d at 1276 ("A child's life simply cannot be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting.") (citations omitted).

We next consider whether the trial court abused its discretion by terminating Mother's parental rights pursuant to Section 2511(b).[6] We have discussed our analysis under Section 2511(b) as follows.

> Section 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. As this Court has explained, Section 2511(b) does not explicitly require a bonding analysis and the term 'bond' is not defined in the Adoption Act. Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered as part of our analysis. While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.
>
> > [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015) (quoting *In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011)) (quotation marks and citations omitted).

Here, the trial court concluded that terminating Mother's parental rights would be in the best interests of the Children. Trial Court Opinion,

---

[6] While Mother does not discuss Section 2511(b) in the argument section of her brief, we will nonetheless consider this issue. *See In re C.L.G.*, 956 A.2d 999, 1010 (Pa. Super. 2008) (*en banc*) (considering Section 2511(b) despite the appellant's failure to challenge the trial court's analysis).

9/29/2015, at 13. The court found that the Children do not have a parent/child bond with Mother, and that termination would not cause the Children to suffer irreparable harm. *Id.* The court also noted that the Children's pre-adoptive foster parents have begun to establish a bond with the Children. *Id.*

We again discern no abuse of discretion. Ms. Lee testified that Mother and the Children were excited to see each other during their visits. N.T., 4/8/2015, at 11. Ms. Lee also noted that M.E.R. would sometimes ask her "[w]here's my mom?" when she would visit the Children at their foster home. *Id.* at 12. However, Ms. Lee did not believe that either of the Children would be harmed if Mother's parental rights were terminated. *Id.* at 13-15. Ms. Lee explained that E.E.R., Jr., did not initially appear to recognize Mother during her most recent visit, that he does not ask about Mother or display distress when visits end, and that he refers to his current foster mother as "mom." *Id.* at 14. With respect to M.E.R., Ms. Lee stated, "He appears content in his foster home. He may ask about her, but he's not emotionally distressed when she's not there." *Id.* at 15. Ms. Lee anticipated that the Children would be transferred to a pre-adoptive foster home once the foster parents are able to complete the medical training necessary to care for E.E.R., Jr. *Id.* at 16.

Ms. Schlonecker testified that the Children currently are visiting with their pre-adoptive foster parents about every other week. *Id.* at 47. Ms.

Schlonecker explained that she has observed two of these visits, and that they "went really well." *Id.* at 46. The foster parents "immediately sought to engage the boys, asking them questions, trying to get to know them, to … find out what they were interested in. They were definitely very involved." *Id.* The Children appear to enjoy the visits. *Id.*

Thus, the record supports the conclusion of the trial court that terminating Mother's parental rights would best serve the needs and welfare of the Children. The Children have seen Mother only eleven times between November of 2013 and March of 2015, and it is highly unlikely that they maintain any significant parent/child bond with her. Mother's lengthy absence from the Children's lives does not appear to have caused them any emotional distress, and the Children will not suffer irreparable harm if Mother's parental rights are terminated. Further, the Children are visiting with pre-adoptive foster parents, and the visits are going well.

Accordingly, because we conclude that the trial court did not abuse its discretion by involuntarily terminating Mother's parental rights to the Children, we affirm the decrees of the trial court pursuant to 23 Pa.C.S. § 2511(a)(2) and (b). In addition, we conclude that Mother has waived any challenge to the orders changing the Children's permanency goals to adoption.

Decrees affirmed. Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/4/2016