J-S71003-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE MATTER OF: C.M.-G, A MINOR | : : : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: J.G., MOTHER | : | No. 569 EDA 2016 |

Appeal from the Decree January 19, 2016
In the Court of Common Pleas of Philadelphia County
Family Court at No(s):  AP# CP-51-AP-0000596-2015, DP# CP-51-DP-0000124-2011, FID# 51-FN-466048-2009

| | | |
|---|---|---|
| IN THE MATTER OF R.O.G., A MINOR | : : : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: J.G., MOTHER | : | No. 570 EDA 2016 |

Appeal from the Decree January 19, 2016
In the Court of Common Pleas of Philadelphia County
Family Court at No(s):  AP# CP-51-AP-0000597-2015, DP# CP-51-DP-0000126-2011, FID# 51-FN-466048-2009

BEFORE:  BOWES, PANELLA, and FITZGERALD*, JJ.

MEMORANDUM BY BOWES, J.:                    **FILED OCTOBER 19, 2016**

J.G. ("Mother") appeals from the January 19, 2016 decrees involuntarily terminating her parental rights to her minor sons, R.O.G., born

_____

* Former Justice specially assigned to the Superior Court.

in April of 2004, and C.M.-G., born in June of 2006.[1]  In addition, Mother appeals from the orders entered that same day, which changed the permanency goals of R.O.G. and C.M.-G. to adoption.  After careful review, we affirm.

The record reveals that the Philadelphia Department of Human Services ("DHS") first became involved with R.O.G. and C.M.-G. in 2011, due to allegations that Mother was homeless and engaging in substance abuse.  DHS obtained orders of protective custody on January 21, 2011, and shelter care orders on January 24, 2011.  However, R.O.G. and C.M.-G. were not adjudicated dependent, and court supervision ended on February 11, 2011.  DHS renewed its involvement with R.O.G. and C.M.-G. in January of 2014, due again to concerns that Mother was abusing substances.  DHS filed dependency petitions on January 6, 2014, and the trial court adjudicated R.O.G. and C.M.-G. dependent following a hearing on January 10, 2014. The court placed R.O.G. and C.M.-G. in foster care, and set their initial permanency goals as "return to parent or guardian."

For approximately the next year and a half, Mother participated intermittently in drug and alcohol treatment at the Wedge Medical Center, and through Casa de Consejeria y Salud.  Mother failed to maintain consistent sobriety.  Finally, Mother entered inpatient treatment at

_____

[1] The trial court entered a separate decree involuntarily terminating the parental rights of R.O.G.'s father, R.M.  C.M.-G.'s father, C.M., is deceased.

Fairmount in late July of 2015, which she completed in August of 2015. Mother progressed to outpatient treatment, and currently resides in a recovery home at Stop and Surrender.

On September 2, 2015, DHS filed petitions to involuntarily terminate Mother's parental rights to R.O.G. and C.M.-G. pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b), as well as petitions to change the permanency goals of R.O.G. and C.M.-G. to adoption. The trial court held a termination and goal change hearing on January 19, 2016, during which the court heard the testimony of Jeffrey Wysinger, the former Northeast Treatment Centers case manager; Amanda Fernandez, the current Northeast Treatment Centers case manager; and Mother. Following the hearing, the court entered decrees terminating Mother's parental rights and orders changing the permanency goals to adoption. Mother timely filed notices of appeal on February 18, 2016, along with concise statements of errors complained of on appeal.

Mother now raises the following issues for our review.

1. Whether the [t]rial [c]ourt erred by terminating the parental rights of Appellant, Mother, under 23 Pa.C.S.A. § 2511 subsections (a)(1), (a)(2), (a)(5) and § 2511(a)(8)?

2. Whether the [t]rial [c]ourt erred by finding, under 23 Pa.C.S.A. § 2511(b), that termination of [Mother's] parental rights best serves the Children's developmental, physical and emotional needs and welfare?

J-S71003-16

Mother's brief at 5.[2]

We consider Mother's claims mindful of our well-settled standard of review.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by § 2511 of the Adoption Act, 23 Pa.C.S. §§ 2101-2938, which requires a bifurcated analysis.

_____

[2] While Mother purports to appeal from the trial court's goal change orders, she does not raise any claim regarding these orders in her statement of questions involved. The argument section of her brief includes no substantive discussion of the goal change orders, nor does it contain any citation to relevant authority. Accordingly, Mother has failed to preserve any challenge to the goal change orders for our review. *See Krebs v. United Refining Co. of Pa.*, 893 A.2d 776, 797 (Pa.Super. 2006) ("We will not ordinarily consider any issue if it has not been set forth in or suggested by an appellate brief's statement of questions involved[.]") (citations omitted); *In re W.H.*, 25 A.3d 330, 339 n.3 (Pa.Super. 2011), *appeal denied*, 24 A.3d 364 (Pa. 2011) (quoting *In re A.C.*, 991 A.2d 884, 897 (Pa.Super. 2010)) ("'[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived.'").

- 4 -

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in [§] 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to [§] 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (citations omitted).

In this case, the trial court terminated Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1) (2), (5), (8), and (b). We need only agree with the trial court as to any one subsection of § 2511(a), as well as § 2511(b), in order to affirm. *In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*), *appeal denied*, 863 A.2d 1141 (Pa. 2004). Here, we analyze the court's decision to terminate under § 2511(a)(8) and (b), which provides as follows.

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

. . . .

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

. . . .

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(8) and (b).

We first address whether the trial court abused its discretion by terminating Mother's parental rights pursuant to § 2511(a)(8).

In order to terminate parental rights pursuant to 23 Pa.C.S.[] § 2511(a)(8), the following factors must be demonstrated: (1) The child has been removed from parental care for 12 months or more from the date of removal; (2) the conditions which led to the removal or placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1275-76 (Pa.Super. 2003). "Notably, termination under [§] 2511(a)(8) . . . does **not** require an evaluation of [a parent's] willingness or ability to remedy the conditions that led to placement of her children." *In re Adoption of R.J.S.*, 901 A.2d 502, 511 (Pa.Super. 2006) (citations omitted) (emphasis in original).

Instantly, the trial court found that Mother has not remedied the conditions that brought R.O.G. and C.M.-G. into care. Trial Court Opinion, 4/29/16, at 14. The court observed that Mother failed to maintain her sobriety and comply with services during much of the dependency of R.O.G.

- 6 -

and C.M.-G., and that Mother subjected both R.O.G. and C.M.-G. to sexual abuse. *Id.* at 15-16. In addition, the court found that terminating Mother's parental rights would be in the best interests of R.O.G. and C.M.-G. *Id.* at 14. The court stressed that R.O.G. and C.M.-G. have a positive relationship with their foster father, and that they will not suffer irreparable harm if Mother's parental rights are terminated. *Id.* at 17.

In response, Mother argues that she has remedied the issues that caused R.O.G. and C.M.-G. to be removed from her care. Mother's brief at 15. Mother emphasizes that she completed parenting and anger management classes, that she visits R.O.G. and C.M.-G. consistently, and that she participates in drug and alcohol and mental health treatment. *Id.* at 14-15. Mother acknowledges that she does not currently have appropriate housing for R.O.G. and C.M.-G., but insists that she will be able to obtain housing. *Id.* at 15. Mother further argues that terminating her parental rights would not serve the needs and welfare of R.O.G. and C.M.-G. *Id.* Mother asserts that R.O.G. and C.M.-G. love her, and that they want to live with her. *Id.* at 17.

After carefully examining the record in this matter, we conclude that the trial court did not abuse its discretion by involuntarily terminating Mother's parental rights. As noted *supra*, DHS presented the testimony of the case manager from Northeast Treatment Centers, Jeffrey Wysinger, during the termination and goal change hearing on January 19, 2016. Mr. Wysinger testified that he was the case manager for R.O.G. and C.M.-G.

- 7 -

from January 10, 2014, until April of 2015.  N.T., 1/19/16, at 7.  Mr. Wysinger explained that he established Single Case Plan objectives for Mother, which required her to address her parenting, housing, mental health, and drug addiction issues.  *Id.* at 11.  Mr. Wysinger referred Mother to the Achieving Reunification Center for parenting, anger management, housing, mental health, and drug and alcohol programs.  *Id.* at 12, 45-46.  Unfortunately, Mother did not comply with any of her Single Case Plan objectives during Mr. Wysinger's time on the case, and she was discharged unsuccessfully from the Achieving Reunification Center in January of 2015.  *Id.* at 17, 41.

With respect to Mother's substance abuse issues, Mr. Wysinger testified that Mother exhibits a pattern of maintaining sobriety for brief periods of time and then relapsing.  *Id.* at 30, 32.  Mr. Wysinger explained that Mother tested positive for marijuana on January 10, 2014, and January 28, 2014.  *Id.* at 9.  Mother then maintained her sobriety until August of 2014, when she relapsed.  *Id.* at 49.  By September of 2014, Mother was once again sober.  *Id.*  However, Mother's sobriety lasted only until January or February of 2015.  *Id.*  Mother relapsed again, and continued to engage in substance abuse until the time Mr. Wysinger departed from this case in April of 2015.  *Id.*  Mother appeared to be under the influence during a visit with R.O.G. and C.M.-G. on March 25, 2015, and she tested positive for cocaine and benzodiazepines in April of 2015.  *Id.* at 19, 22, 29, 41, 47.

With respect to visitation, Mr. Wysinger testified that Mother was offered two-hour visits with R.O.G. and C.M.-G. twice per week from February of 2014 until August of 2014. *Id.* at 23-24. One of Mother's visits took place at the agency, while the other took place unsupervised at Mother's home. *Id.* at 23. Mother participated in visits consistently. *Id.* However, Mother was reverted to line of sight visits in August of 2014, due to allegations made by R.O.G. and C.M.-G. *Id.* at 28, 50. Specifically, R.O.G. and C.M.-G. reported that they watched R-rated movies, and that "[p]rior to the movies, when the children were living in the home, . . . [while] [t]he children were peering through an opening in the wall, [M]other was having sex with men. And then the children were asked to pop pimples inside [M]other's vagina." *Id.* at 26-27. According to Mr. Wysinger, R.O.G. and C.M.-G. "were quite graphic about it." *Id.* at 28. As a result of these allegations, Mother was indicated for sexual abuse. *Id.* at 26-28.

Concerning the needs and welfare of R.O.G. and C.M.-G., Mr. Wysinger testified that R.O.G. and C.M.-G. reside together in a pre-adoptive foster home. *Id.* at 35. R.O.G. and C.M.-G. have a positive relationship with their foster parent, and they look up to him as a father figure. *Id.* at 32-36. Based on this positive relationship, Mr. Wysinger did not believe that terminating Mother's parental rights would cause R.O.G. and C.M.-G. to suffer irreparable harm. *Id.* at 35-36.

DHS also presented the testimony of the current Northeast Treatment Centers case manager, Amanda Fernandez. Ms. Fernandez was assigned to

this matter in June of 2015. *Id.* at 57. Ms. Fernandez testified that Mother entered an inpatient treatment program at Fairmount in late July of 2015. *Id.* at 58. At the time Mother entered inpatient treatment, she admitted that she was using the drugs K-2 and PCP. *Id.* Mother completed inpatient treatment in August of 2015, and then went on to receive outpatient treatment. *Id.* Currently, Mother resides in a recovery home at Stop and Surrender. *Id.* at 57-58. Ms. Fernandez reported that Mother completed both parenting and anger management programs while at Stop and Surrender, and that she is compliant with her drug and alcohol treatment. *Id.* at 59, 72-73, 78-79. However, Ms. Fernandez expressed concern that Mother has a pattern of participating in drug and alcohol treatment and then relapsing. *Id.* at 65-66.

Concerning the needs and welfare of R.O.G. and C.M.-G., Ms. Fernandez agreed that terminating Mother's rights would not cause R.O.G. and C.M.-G. to suffer irreparable harm. *Id.* at 64-65. Ms. Fernandez explained that R.O.G. and C.M.-G. "have really grown and exceeded" since being placed with their foster father. *Id.* at 61. R.O.G. and C.M.-G. are now on the honor role at school, and are "doing really well[.]" *Id.* at 61-63. Ms. Fernandez believed that R.O.G. and C.M.-G. share a parental bond with their foster father. *Id.* at 63. They have a "great" relationship with their foster father, and they feel safe in his home. *Id.* Ms. Fernandez also reported that she discussed the possibility of terminating Mother's parental rights with R.O.G. and C.M.-G. *Id.* at 67-69. Both R.O.G. and C.M.-G. indicated that

they understood the situation, and that they would like to remain with their foster father. *Id.*

Accordingly, the record supports the finding of the trial court that R.O.G. and C.M.-G. have been removed from Mother's care for more than twelve months, and that the conditions that led to the removal of R.O.G. and C.M.-G. continue to exist. R.O.G. and C.M.-G. were removed from Mother's care on January 10, 2014, due primarily to Mother's substance abuse issues. Mother briefly was able to maintain her sobriety, but relapsed in August of 2014, and relapsed again in January or February of 2015. Admittedly, Mother made some progress in addressing her substance abuse issues by entering inpatient treatment in late July of 2015, and then continuing on to outpatient treatment in August of 2015. However, by the time DHS filed its termination petitions on September 2, 2015, Mother had only been able to maintain her sobriety for a period of less than two months, and only while living in the confines of a treatment facility or recovery home. As observed by both Mr. Wysinger and Ms. Fernandez, Mother has exhibited a pattern of relapsing, achieving sobriety, and relapsing again. Given Mother's history of relapses, it is clear that she has not remedied the conditions that brought R.O.G. and C.M.-G. into care.

In addition, the record supports the trial court's finding that terminating Mother's parental rights would best serve the needs and welfare of R.O.G. and C.M.-G. The children are thriving in the care of their pre-adoptive foster father, and both children have stated that they would like to

remain with him. Meanwhile, Mother has an unresolved history of substance abuse, and has sexually abused both boys. As this Court has stated, "a child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future." *R.J.S., supra* at 513.

We next consider whether the trial court abused its discretion by terminating Mother's parental rights pursuant to § 2511(b). We have discussed our analysis under § 2511(b) as follows.

> [§] 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. As this Court has explained, [§] 2511(b) does not explicitly require a bonding analysis and the term 'bond' is not defined in the Adoption Act. Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered as part of our analysis. While a parent's emotional bond with his or her child is a major aspect of the [§] 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.
>
> > [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa.Super. 2015) (quoting

*In re N.A.M.*, 33 A.3d 95, 103 (Pa.Super. 2011)) (quotation marks and

citations omitted).[3]

As highlighted *infra*, the certified record confirms that terminating

Mother's parental rights will best serve the children's developmental,

physical, and emotional needs and welfare. R.O.G. and C.M.-G. are thriving

in the pre-adoptive foster home. The children feel safe and secure with their

foster father and rely upon him to satisfy their daily needs. Indeed, as

evidenced by the certified record, the only meaningful parental bond in this

case exists between the foster father and the children. Moreover, as Ms.

Fernandez testified during the hearing, R.O.G. and C.M.-G. understand the

significance of terminating Mother's parental rights and both stated their

desire to remain with their pre-adoptive foster father.

For all of the forgoing reasons, we conclude that the trial court did not

abuse its discretion in terminating Mother's parental rights to R.O.G. and

C.M.-G. pursuant to § 2511(a)(8) and (b). In addition, since Mother

abandoned her challenge to the dependency orders changing the

---

[3] We observe that the needs-and-welfare determinations under § 2511(a)(8) and § 2511(b) are distinct and require separate analysis. *See In re C.L.G*., 956 A.2d 999, 1009 (Pa.Super. 2008) (*en banc*) ("[W]hile both [§] 2511(a)(8) and [§] 2511(b) direct us to evaluate the 'needs and welfare of the child,' . . . they are distinct in that we must address [§] 2511(a) before reaching [§] 2511(b).").

permanency goals of R.O.G. and C.M.-G. from reunification to adoption, we do not disturb those orders either.

Decrees affirmed.  Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/19/2016