J-S65017-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| IN THE INTEREST OF: N.S.D., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| APPEAL OF: T.D., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1216 EDA 2017 |

Appeal from the Decree March 16, 2017
In the Court of Common Pleas of Philadelphia County
Family Court at No(s):  CP-51-0000084-2017,
CP-51-DP-0002374-2011

| IN THE INTEREST OF: R.P.D., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| APPEAL OF: T.D., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1217 EDA 2017 |

Appeal from the Decree March 16, 2017
In the Court of Common Pleas of Philadelphia County
Family Court at No(s):  CP-51-AP-0000085-2017,
CP-51-DP-0002589-2014

BEFORE:  OLSON, J., OTT, J., and MUSMANNO, J.

MEMORANDUM BY OTT, J.:                    **FILED NOVEMBER 06, 2017**

T.D. ("Mother") appeals from the decrees entered March 16, 2017, in the Court of Common Pleas of Philadelphia County, which involuntarily terminated her parental rights to her minor daughters, N.S.D., born in November 2011, and R.P.D., born in October 2012 (collectively, "the

Children").[1]  After careful review, we affirm in part, vacate in part, and remand for further proceedings.

The record reveals that the Philadelphia Department of Human Services ("DHS") filed dependency petitions with respect to the Children on November 3, 2014.  In its petitions, DHS averred that it had a lengthy prior history of involvement with Mother, dating back to 2009.  Dependency Petition (N.S.D.), 11/3/2014, at 8 (unnumbered pages).  DHS averred that Mother had a history of substance abuse and mental health issues, lacked stable housing, and that the Children's two older siblings had already been removed from her care.  *Id.* DHS requested that the Children be adjudicated dependent, but remain with Mother.  *Id.* at 8-9.  The trial court entered continuance orders deferring the adjudication on November 19, 2014, and January 14, 2015.

On January 29, 2015, the trial court entered additional continuance orders, directing DHS to obtain orders of protective custody.  DHS filed applications for orders of protective custody that same day, in which it averred that Mother was noncompliant with her drug and alcohol and mental health treatment program, and that she also was noncompliant with the rules of the shelter where she resided with the Children.  Application for Order of Protective Custody (N.S.D.), 1/29/2015.  The court granted the applications,

_____

[1] The trial court entered separate decrees that same day, terminating the parental rights of N.S.D.'s putative father, M.C., the parental rights of any unknown father of N.S.D., and the parental rights of any unknown father of R.P.D.  Neither M.C., nor any unknown father, appealed the termination of his parental rights.

and placed the Children in foster care. The Children remained in foster care pursuant to shelter care orders entered January 30, 2015. DHS filed updated dependency petitions on February 4, 2015, and the court adjudicated the Children dependent by orders entered March 10, 2015.

On January 24, 2017, DHS filed petitions to involuntarily terminate Mother's parental rights to the Children. The trial court conducted a termination hearing on March 16, 2017, at which Mother failed to appear. Following the hearing, the court entered decrees terminating Mother's parental rights. Mother timely filed notices of appeal on April 10, 2017, along with concise statements of errors complained of on appeal.

Mother now raises the following questions for our review.

1. Whether the Trial Court erred by terminating the parental rights of Appellant, [Mother], under 23 Pa.C.S.A. §[]2511(a)(1)?

2. Whether the Trial Court erred by terminating the parental rights of Appellant, [Mother], under 23 Pa.C.S.A. §[]2511(a)(2)?

3. Whether the Trial Court erred by terminating the parental rights of Appellant, [Mother], under 23 Pa.C.S.A. §[]2511(a)(5)?

4. Whether the Trial Court erred by terminating the parental rights of Appellant, [Mother], under 23 Pa.C.S.A. §[]2511(a)(8)?

5. Whether the Trial Court erred by terminating the parental rights of Appellant, [Mother], under 23 Pa.C.S.A. §[]2511(b)?

Mother's brief at 5 (suggested answers and trial court answers omitted).[2]

_____

[2] In her notices of appeal, and in the orders in question section of her brief, Mother indicates that she also is appealing the permanency review orders entered March 16, 2017, changing the Children's permanency goals to

We address these issues mindful of our well-settled standard of review.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence

_____

adoption. However, Mother did not include any claim regarding the goal change orders in her concise statements. In addition, Mother did not include any such claim in her statement of questions involved, or in the argument section of her brief. Accordingly, we conclude that Mother waived any challenge to the goal change orders, and we focus solely on the decrees terminating her parental rights. *See Krebs v. United Refining Co. of Pa.*, 893 A.2d 776, 797 (Pa. Super. 2006) ("We will not ordinarily consider any issue if it has not been set forth in or suggested by an appellate brief's statement of questions involved, and any issue not raised in a statement of matters complained of on appeal is deemed waived.") (citations omitted); *In re W.H.*, 25 A.3d 330, 339 n.3 (Pa. Super. 2011), *appeal denied*, 24 A.3d 364 (Pa. 2011) (quoting *In re A.C.*, 991 A.2d 884, 897 (Pa. Super. 2010)) ("[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived.").

that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

In this case, the trial court terminated Mother's parental rights pursuant to Section 2511(a)(1), (2), (5), (8), and (b). We need only agree with the court as to any one subsection of Section 2511(a), as well as Section 2511(b), in order to affirm. *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*), *appeal denied*, 863 A.2d 1141 (Pa. 2004). Here, we analyze the court's decision to terminate under Section 2511(a)(2) and (b), which provides as follows.

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\*\*\*

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\*\*\*

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights

of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (b).

We first address whether the trial court abused its discretion by terminating Mother's parental rights pursuant to Section 2511(a)(2).

In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003) (citation omitted). "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002) (citations omitted).

Instantly, the trial court found that Mother is incapable of parenting the Children, and that Mother cannot, or will not, remedy her parental incapacity. Trial Court Opinion, 7/15/2017, at 8-9. The court reasoned that Mother failed to complete her Single Case Plan ("SCP") objectives, in that she did not obtain mental health treatment, failed to comply with drug treatment and drug

screens, lacks appropriate housing, and lacks employment. *Id.* The court further reasoned that, while Mother completed an anger management program, she continues to engage in threatening behavior. *Id.* at 9. Finally, the court reasoned that Mother has only attended visits with the Children consistently since September 2016. *Id.*

Mother argues that the trial court erred by terminating her parental rights, because DHS failed to present clear and convincing evidence in support of its petition. Mother's brief at 15. Mother argues that she completed housing, anger management, and parenting programs, as well as a parenting capacity evaluation. *Id.* at 15-16.

Our review of the record supports the trial court's findings. During the termination hearing, DHS presented the testimony of Community Umbrella Agency case manager, Tamara Whittaker. Ms. Whittaker testified that Mother's outstanding SCP objectives included obtaining stable housing and employment, stabilizing her mental health, and participating in visitation. N.T., 3/16/2017, at 18. Ms. Whittaker testified that Mother completed a housing program, but that she remains without stable housing or employment. *Id.* at 20-21, 23. Further, Mother is not currently enrolled in mental health treatment. *Id.* at 18. Mother's mental health remains a concern, because "[s]he does present, at times, [as] very unstable. She's aggressive at times, and we just don't know where she stands with her mental health." *Id.* at 27. Finally, Ms. Whittaker testified that Mother visits with the Children once per week for an hour. *Id.* at 22. Mother has attended her visits consistently since

September 2016, although her attendance prior to then was inconsistent. *Id*. at 23.

During her testimony, Ms. Whittaker placed particular emphasis on Mother's aggressive behavior. Ms. Whittaker testified that Mother completed an anger management program, but that she did not believe that Mother was utilizing the skills that she learned in the program. *Id.* at 22. She explained, "[w]e recently had some concerns in February of 2017. Mom engaged in inappropriate conversations with the caregiver. She's called the home, sent text messages, left voicemail messages threatening to fight them." *Id.* Ms. Whittaker requested a stay-away order on the foster parent's behalf, due to these threats.[3] *Id.* at 25.

Thus, the record presents clear and convincing evidence that Mother is incapable of parenting the Children, and that Mother cannot, or will not, remedy her parental incapacity. At the time of the termination hearing, the Children had already been in foster care for over two years, and Mother had made little, if any, progress toward reunification. Mother remained without stable housing or employment, and her mental health issues remained unresolved. Moreover, Mother engaged in aggressive behavior, including threatening the Children's foster parent. As this Court has stated, "a child's

---

[3] Ms. Whittaker testified that the Children's foster parent "turned in [her] 30-day notice" as a result of these threats, but later withdrew it. N.T., 3/16/2017, at 28-29. In its opinion, the trial court indicates that this testimony refers to the "thirty-day notice for removal of the Children from her home[.]" Trial Court Opinion, 7/15/2017, at 5.

life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future."[4] **In re Adoption of R.J.S.**, 901 A.2d 502, 513 (Pa. Super. 2006).

We next consider whether the trial court abused its discretion by terminating Mother's parental rights pursuant to Section 2511(b). We have discussed our analysis under Section 2511(b) as follows.

> Section 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. As this Court has explained, Section 2511(b) does not explicitly require a bonding analysis and the term 'bond' is not defined in the Adoption Act. Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered as part of our analysis. While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.

---

[4] The certified record does not support the trial court's finding that Mother failed to comply with drug treatment. The record contains a Clinical Evaluation Unit ("CEU") progress report, dated June 9, 2015, indicating that Mother completed a CEU evaluation, and that "CEU would tentatively recommend [Mother] would not benefit from any substance abuse treatment[.]" CEU Progress Report, 6/9/2015. On February 3, 2016, the court entered permanency review orders indicating that "D&A treatment is no longer needed as to Mother." Permanency Review Order (N.S.D.), 2/3/2016, at 3. While DHS presented several CEU reports of noncompliance during the termination hearing, which the court admitted into evidence, all of those reports predated the court's February 3, 2016 permanency review order. The most recent report, Exhibit 16, is dated January 14, 2014. Nonetheless, we find that the court's remaining findings with respect to Section 2511(a)(2) are supported by the record, and are more than sufficient to affirm the court's decision.

> [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015) (quoting *In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011)) (quotation marks and citations omitted).

Here, the trial court found that terminating Mother's parental rights would best serve the needs and welfare of the Children. Trial Court Opinion, 7/15/2017, at 13. The court reasoned that there is no parental bond between the Children and Mother, and that terminating Mother's parental rights would not cause the Children to suffer irreparable harm. *Id.* The court further reasoned that the Children are doing well in their foster home, and that the Children's foster parent meets all of their needs. *Id.*

Mother argues that DHS failed to present clear and convincing evidence that terminating her parental rights would best serve the Children's needs and welfare. Mother's brief at 18. Mother emphasizes that she has been compliant with visitation since September 2016. *Id.*

After a careful review of the record in this matter, we agree with Mother, and conclude that DHS failed to meet its burden of proof with respect to Section 2511(b). As detailed above, the Children were born in November 2011, and October 2012, respectively. At the time the Children were removed

from Mother's care, in January 2015, they were three and two years old.[5] In addition, by the time of the termination hearing, Mother had been attending her visits with the Children consistently for approximately six months, starting in September 2016. While Ms. Whittaker testified that Mother attended visits with the Children inconsistently prior to September 2016, she did not specify how inconsistent Mother's visits were. Thus, both of the Children have spent a significant amount of time in Mother's care, and the record suggests that they may continue to share a bond with her.

However, during the termination hearing, DHS presented only minimal evidence addressing the relationship between the Children and Mother, and the effect that terminating that relationship would have on the Children. In fact, the only evidence presented during the entire hearing to address these issues was the following testimony by Ms. Whittaker.

> [Counsel for DHS]: With regards to [N.S.D.] and [R.P.D.], do you believe there would be any irreparable harm to either children [sic] if [M]other's parental rights were terminated?
> Ms. Whittaker: No.
>
> ***

_____

[5] The record reveals that N.S.D. was removed from Mother's care once before, shortly after her birth in November 2011, and adjudicated dependent in December 2011. **See** Exhibit 11 (Order of Protective Custody); Exhibit 12 (Order of Adjudication and Disposition – Child Dependent). N.S.D. was returned to Mother's care only a few months later, in March 2012. N.T., 3/16/2017, at 15. The dependency docket indicates that N.S.D. remained dependent while in Mother's care for another year, until court supervision was terminated in March 2013.

[Counsel for DHS]: Do you believe there is a positive, healthy maternal relationship between [M]other and [N.S.D.] or [M]other and [R.P.D.]?

Ms. Whittaker: No.

\*\*\*

[Counsel for DHS]: Okay.  With regards to these children, where are they presently residing?

Ms. Whittaker: They currently reside at a general foster home through Children's Choice.

[Counsel for DHS]: And how are they doing there?

Ms. Whittaker: They're doing well in the home.

N.T., 3/16/2017, at 26-27.

This testimony is simply too weak to support the trial court's findings with respect to Section 2511(b).  While Ms. Whittaker opined that the Children do not share "a positive, healthy maternal relationship" with Mother, and would not suffer irreparable harm if Mother's parental rights were terminated, she did not explain her opinions and offered only conclusory one-word answers.  Indeed, Ms. Whittaker's testimony provides no real insight at all into the relationship between the Children and Mother, particularly since the Children were in Mother's care before they were removed at ages three and two, respectively, and she attended visits.  Given the sparsity of testimony concerning the best interests of the Children, we find that DHS has failed to prove by clear and convincing evidence that termination of Mother's rights is in their best interest.  *See In re Adoption of A.C.H.*, 803 A.2d 224, 229-30 (Pa. Super. 2002) (reversing a termination order where the record lacked

- 12 -

sufficient evidence addressing the appellant's bond with her child, and where the trial court addressed the child's needs and welfare in a conclusory fashion).

Based on the foregoing, we affirm the portion of the trial court's decrees terminating Mother's parental rights with respect to Section 2511(a), and we vacate the portion terminating Mother's parental rights with respect to Section 2511(b). Further, we remand this matter and direct the court to conduct an additional termination hearing as soon as possible, so that it may hear testimony regarding the relationship between the Children and Mother. The court must then conduct a new Section 2511(b) analysis, and determine if there is clear and convincing evidence to grant the termination petition.

Decrees affirmed in part and vacated in part. Case remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished. Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/6/2017