J-S73020-17 & J-S73021-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: B.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: L.S., MOTHER | : | No. 1012 MDA 2017 |

Appeal from the Order Entered May 26, 2017
In the Court of Common Pleas of Cumberland County Civil Division at
No(s): CP-21-DP-0000250-2015

| | | |
|---|---|---|
| IN THE ADOPTION OF: B.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: L.S., MOTHER | : | No. 1020 MDA 2017 |

Appeal from the Decree May 30, 2017
In the Court of Common Pleas of Cumberland County Orphans' Court
at No(s): 33 ADOPTIONS 2017

BEFORE:   OLSON, J., DUBOW, J., and STRASSBURGER*, J.

MEMORANDUM BY DUBOW, J.:                    **FILED DECEMBER 19, 2017**

In these consolidated appeals, L.S. ("Mother") appeals from the decree

entered May 30, 2017, which involuntarily terminated her parental rights to

her minor daughter, B.S. ("Child"), born in October 2003.  Mother also appeals

_____

* Retired Senior Judge assigned to the Superior Court.

from the order entered May 26, 2017, which changed Child's permanent placement goal from reunification to adoption.[1]  Because the record supports the trial court's decision, we affirm.

**SUMMARY OF FACTS AND PROCEDURAL HISTORY**

Cumberland County Children and Youth Services ("CYS") filed a shelter care application and dependency petition with respect to Child on November 19, 2015.  Therein, CYS raised a variety of concerns pertaining to Child's significant mental health issues, Mother's failure to provide Child with mental health or medical treatment, and Mother's lack of housing.  Shelter Care Application, 11/19/15, at 3-6; Dependency Petition, 11/19/15, at 1-3.  The trial court entered a shelter care order on December 7, 2015, and adjudicated Child dependent that same day.

Initially, the trial court placed Child in the care of her older sister, K.S., while prohibiting any unsupervised contact between Child and K.S.'s boyfriend, J.M., due to his recent criminal history.  On December 17, 2015, CYS filed an additional shelter care application, in which it averred that a caseworker discovered Child alone with J.M. during an unannounced home visit.  Shelter Care Application, 12/17/15, at 3-4.  Following a hearing, the

---

[1] Child's father, D.G., executed a consent to adoption form on February 16, 2017.  The trial court entered a decree confirming D.G.'s consent and terminating his parental rights on May 30, 2017.  D.G. did not appeal the termination of his parental rights, nor did he file a brief in connection with the instant appeal.

court entered a shelter care order on April 15, 2016, placing Child in the care of her maternal great aunt, R.F.[2]

On December 22, 2016, CYS filed a petition to change Child's permanent placement goal from reunification to adoption. CYS filed a petition to terminate Mother's parental rights to Child involuntarily on May 9, 2017. The trial court conducted a combined goal change and termination hearing on May 26, 2017. Following the hearing, the court entered a permanency review order changing Child's goal to adoption. The court also entered a decree on May 30, 2017, terminating Mother's parental rights. Mother timely filed notices of appeal on June 26, 2017, along with concise statements of errors complained of on appeal.[3]

**ISSUES ON APPEAL**

Mother now raises the following issues for our review.

1. The Honorable Court erred as a matter of law and abused its discretion in changing the goal for these children [*sic*] to adoption and terminating [Mother's] parental rights in that [Mother] is able

---

[2] In addition, CYS filed an emergency motion for modification of placement on April 7, 2016, averring that K.S. and J.M. used marijuana in the home with Child present. Emergency Motion for Modification of Placement, 4/7/16, at 1-2 (unnumbered pages). CYS filed a motion to withdraw the motion for modification of placement on June 23, 2016, and the trial court entered an order on June 28, 2016, denying the motion for modification of placement without prejudice.

[3] Thirty days after May 26, 2017, was Sunday, June 25, 2017. Thus, Mother timely appealed the trial court's goal change order on Monday, June 26, 2017. **See** 1 Pa.C.S. § 1908 ("Whenever the last day of any such period shall fall on Saturday or Sunday, … such day shall be omitted from the computation.").

to provide the child with the essential parental care, control, and subsistence.

2. The Honorable Court erred as a matter of law and abused its discretion in terminating [Mother's] parental rights in that the conditions which led to the removal or placement of the child no longer existed or were substantially eliminated.

3. This Honorable Court was in error in determining the best interest of the child would be served by terminating [Mother's] parental rights.

4. This Honorable Court was in error in determining the best interests of the child would be served by changing the goal for this child to adoption and terminating parental rights.

Mother's Brief at 4.

**LEGAL ANALYSIS**

We begin by addressing Mother's challenge to the involuntary termination of her parental rights.

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S. §§ 2101-2938, which requires a bifurcated analysis.

- 4 -

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

In this case, the trial court terminated Mother's parental rights pursuant to Sections 2511(a)(2), (5), (8), and (b). We need only agree with the court as to any one subsection of Section 2511(a), as well as Section 2511(b), in order to affirm. *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*), *appeal denied*, 863 A.2d 1141 (Pa. 2004). Here, we analyze the court's decision to terminate under Section 2511(a)(2) and (b), which provides as follows.

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> ***
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> ***

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(2), (b).

**Termination Pursuant to Section 2511(a)(2)**

Trial courts should apply the following analysis when ruling on a petition to terminate parental rights pursuant to Section 2511(a)(2).

In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

***In re Adoption of M.E.P.***, 825 A.2d 1266, 1272 (Pa. Super. 2003) (citation omitted). "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." ***In re A.L.D.***, 797 A.2d 326, 337 (Pa. Super. 2002) (citations omitted).

While Mother's statement of questions involved includes four separate issues challenging the termination of her parental rights and the change of

Child's permanent placement goal to adoption, she combines these issues into a single argument section in her brief. Mother argues that she substantially eliminated the original reasons for Child's placement. Mother's Brief at 9. Mother emphasizes that she obtained housing, visited with Child, and participated in parenting instruction. *Id.* at 6, 10.

In its opinion, the trial court found that CYS presented clear and convincing evidence in support of its petition to terminate Mother's parental rights. Trial Court Opinion, 8/7/17, at 4. The court reasoned that Mother made little progress toward complying with Child's permanency plan goals. *Id.* at 4-5. The court explained that Mother delayed in obtaining housing and participating in parenting instruction, and that she failed to participate in Child's medical, dental, mental health, and education appointments. *Id.* at 5-6.

After a thorough review of the record in this matter, we conclude that the trial court did not abuse its discretion. During the hearing, CYS presented the testimony of caseworker, Pamela Gross. Ms. Gross testified that Mother's permanency plan goals included obtaining housing, providing adequate supervision, maintaining visits with Child, ensuring school attendance, and addressing Child's medical and mental health needs. N.T., 5/26/17, at 35, 39.

Concerning Mother's compliance with these goals, Ms. Gross testified that Mother had housing shortly before the trial court removed Child from her care in November 2015. *Id.* at. 34. However, Mother was evicted "because

her boyfriend, [J.H.], was not supposed to be living in the home. She chose to leave with him[.]" *Id.* Mother and J.H. then lived in a hotel room until they obtained new housing in December 2016. *Id.* Mother did not notify CYS that she obtained new housing until February 2017.[4] *Id.* at 39.

Ms. Gross further testified that Mother failed to maintain consistent contact with Child. *Id.* at 35. Mother did not visit with Child in November or December 2016. *Id*. at 35, 74. Mother reported to CYS that she did not visit because she lacked transportation, and because J.H. was sick.[5] *Id.* at 35. Mother also failed to send letters or cards to Child during that time. *Id.* Most

---

[4] In its opinion, the trial court found that "[l]ack of housing initially prevented Mother from participating in the recommended parenting classes. Even after she obtained the necessary housing, she did not start the parent training for almost five months, by which time the Petition to terminate her parental rights had been filed." Trial Court Opinion, 8/7/17, at 5 (footnote omitted). The record does not support this finding. The record reveals that Mother completed an introductory parenting program, but that she was unable to participate in further instruction until she obtained new housing. *See* CYS Exhibit 5 (Training for Improved Parentings Skills Final Assessment, dated August 26, 2016) (explaining that Mother completed the "TIPS program," and that she should begin the "SKILLS program" once she has appropriate housing). After obtaining new housing, Mother resumed parenting instruction in March 2017. *See* N.T., 5/26/17, at 20 (Mother's parenting instructor testifying that "we did guided visitation and SKILLS" on March 12, 2017). CYS filed its termination petition two months later, on May 9, 2017.

[5] During Child's dependency, Mother lived in Cumberland County and York County, while Child's foster mother, R.F., lived in Cambria County.

significantly, Mother did not send Child a card for her birthday in October 2016, or for the following Christmas.[6] *Id.*

Finally, Ms. Gross testified that the Bair Foundation notified Mother of all of Child's dental, medical, and school appointments. *Id.* at 48. The Bair Foundation also provided Mother with the opportunity to participate in the appointments by submitting a letter, or by appearing in person or by phone. *Id.* at 43, 48. Mother did not participate in the appointments.[7] *Id.* at 40, 43-44, 47-48.

Thus, the record confirms that Mother is incapable of caring for Child, and that Mother cannot, or will not, remedy her parental incapacity. As detailed above, the trial court removed Child from Mother's care in November 2015. For the next year and a half, Mother made only minimal efforts to achieve reunification. Mother's decision to abandon her housing in favor of living with J.H. in a hotel room, and her failure to obtain new housing for over a year, is particularly telling.[8] Also troubling is Mother's complete lack of interest in Child's dental, medical, mental health, and educational needs.

---

[6] The trial court ordered that Mother could not have phone contact with Child during that time, at the recommendation of Child's therapist, but did not prohibit Mother from sending letters and cards. N.T., 5/26/17, at 35.

[7] In addition, Child's foster mother, R.F., testified that Mother has not "had any input" regarding Child's mental health treatment. N.T., 5/26/17, at 51.

[8] There is no indication in the record that Mother's lack of housing was beyond her control. *See* 23 Pa.C.S. § 2511(b) ("The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.").

While the record indicates that Mother made some recent progress, we cannot infer from this that Mother will maintain that progress for any significant length of time. As this Court has stated, "a child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future." *In re Adoption of R.J.S.*, 901 A.2d 502, 513 (Pa. Super. 2006).

**Termination Pursuant to Section 2511(b)**

We next consider whether the trial court erred or abused its discretion by terminating Mother's parental rights pursuant to Section 2511(b).

> Section 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. As this Court has explained, Section 2511(b) does not explicitly require a bonding analysis and the term 'bond' is not defined in the Adoption Act. Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered as part of our analysis. While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.
>
>> [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015) (quoting *In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011)) (quotation marks and citations omitted).

Here, Mother argues that Child has a "significant bond" with her. Mother's Brief at 6, 10. Mother contends that she performed well during parenting instruction sessions with Child, and that she and Child display a healthy relationship and loving interaction. *Id.* at 10.

The trial court found that terminating Mother's parental rights would best serve Child's needs and welfare. Trial Court Opinion, 8/7/17, at 6. The court reasoned that Child has thrived since being removed from Mother's care, and that Child wants to be adopted by her foster mother, R.F. *Id.* at 6-7.

We again discern no abuse of discretion. At the start of the hearing, the trial court conducted an *in camera* interview of Child. During the interview, Child asked to continue living with R.F. N.T., 5/26/17, at 5. Child explained, "I would like to live with [R.F.] and not my real mom, because I had a bad life with her before. I was always locked in my bedroom." *Id.* When the court stated that the purpose of the hearing was to determine whether "they should adopt you," Child stated, "[t]hey should, they should, they should." *Id.* at 6.

The trial court also heard from R.F., who testified that Child was in poor physical health at the time she began residing with her in April 2016. *Id.* at 50. R.F. explained that Child "had real bad acne that was infected. It was sore from like the midchest up, on her back. Her personal hygiene, her body was very odiferous. She wore Pull-Ups. She was not potty-trained. Her teeth

- 11 -

were in bad health. She was behind on all of her shots." *Id.* Similarly, Child was struggling educationally. *Id.* at 51. "At the age of 12, she was in the sixth grade and was reading at a third-grade level. She could not tell time. She did not know her multiplication. She could not cursively write her first name." *Id.* R.F. testified that Child improved dramatically since that time. *Id.* at 53, 58. Child is now potty-trained, her physical health is fine, and she reads at a fifth grade level. *Id.*

Thus, it is clear that terminating Mother's parental rights will best serve Child's needs and welfare. Child was emphatic during her interview with the trial court that she wants R.F. to adopt her. Adoption will provide Child with the benefits of a permanent and stable home, will ensure that Child continues to maintain appropriate medical and dental care, and will allow Child to continue progressing educationally. While the record indicates that Child has a significant relationship with Mother, termination of this relationship will not be detrimental to the Child.

**GOAL CHANGE**

Finally, we consider whether the trial court abused its discretion by changing Child's permanent placement goal from reunification to adoption.

> [T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

*In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010).

Goal change proceedings are governed by the Juvenile Act, 42 Pa.C.S. §§ 6301–6375. This Court has summarized the requisite analysis as follows.

> Pursuant to [42 Pa.C.S.] § 6351(f) of the Juvenile Act, when considering a petition for a goal change for a dependent child, the juvenile court is to consider, *inter alia:* (1) the continuing necessity for and appropriateness of the placement; (2) the extent of compliance with the family service plan; (3) the extent of progress made towards alleviating the circumstances which necessitated the original placement; (4) the appropriateness and feasibility of the current placement goal for the children; (5) a likely date by which the goal for the child might be achieved; (6) the child's safety; and (7) whether the child has been in placement for at least fifteen of the last twenty-two months. The best interests of the child, and not the interests of the parent, must guide the trial court. As this Court has held, a child's life simply cannot be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting.

*In re A.B.*, 19 A.3d 1084, 1088-89 (Pa. Super. 2011) (citations and quotation marks omitted).

As explained above, Mother combines all four of her issues into a single argument section in her brief. While Mother appealed the goal change order, and while she indicated in her concise statements and statement of questions involved that she would like to challenge the goal change order, the argument section of her brief contains no argument relating to the goal change. Mother does include some case law discussing goal changes, but the substance of her argument focuses exclusively on the termination of her parental rights. Thus, we conclude that any challenge to the goal change is waived. *In re W.H.*, 25 A.3d 330, 339 n.3 (Pa. Super. 2011) (quoting *In re A.C.*, 991 A.2d 884, 897 (Pa. Super. 2010)) ("'[W]here an appellate brief fails to provide any discussion

of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived.'").

Even if Mother had preserved a challenge to the goal change order in her brief, she still would not be entitled to relief. For the reasons already discussed, it is clear that changing Child's goal to adoption is in her best interest. Mother remains incapable of parenting Child, and it is not clear when, if ever, she will be capable. Child wants to be adopted by R.F., and granting Child's wish will allow her recent progress to continue.

Based on the foregoing, we conclude that the trial court did not abuse its discretion by terminating Mother's parental rights involuntarily. We further conclude that Mother waived any challenge to the order changing Child's permanent placement goal to adoption. Therefore, we affirm the court's May 30, 2017 decree, and May 26, 2017 order.

Decree affirmed. Order affirmed.


Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/19/2017

- 14 -