In re W.H.

Appeal of L.B., the Natural
Mother, Appellant.

In re W.H.

Appeal of L.B., Natural
Mother, Appellant.

Superior Court of Pennsylvania.

Argued Feb. 16, 2011.
Filed June 6, 2011.

Mary E. Chajkowski, Pittsburgh, for appellant.

Mark B. Greenblatt, Pittsburgh, for Allegheny County Children and Youth, participating party.

BEFORE: BOWES, DONOHUE, and SHOGAN, JJ.

OPINION BY BOWES, J.:

In these consolidated interlocutory appeals, L.B. ("Mother") challenges two orders the juvenile court entered as part of her son's ongoing mental health treatment. In the appeal listed at 886 WDA 2010, Mother challenges the May 7, 2010 order permitting the Allegheny County Office of Children Youth and Families ("CYF") to treat W.H.'s mental health disorder with psychotropic medication. In the appeal listed at 1128 WDA 2010, Mother assails the July 1, 2010 order canceling an appointment that she scheduled for W.H. to begin therapy at Mercy Behavioral Health. Upon review of the certified record, we dismiss the appeal filed at 1128 WDA 2010 as moot, and we deny CYF's motion to dismiss the appeal filed at 886 WDA 2010 and affirm at that number.

The trial court summarized the underlying facts and procedural history as follows:

L.B. is the mother of W.H..... [Mother] and the child have a history with CYF dating back to 2007. The child along with a sibling were found dependent on December 19, 2007 by the Honorable Judge Robert Colville, Jr. and removed from [Mother's] care on June 18, 2008. [The juvenile] court changed the goal from reunification to adoption on August 19, 2009. On Sep-

tember 22, 2009, [Mother] filed an appeal of [the juvenile] court's August 19, 2009 Order at 1597 WDA 2009. On October 21, 2009, Guardian *Ad Litem* (hereafter GAL) filed a Motion to Reduce [Mother's] visits with W.H. and his sibling due to allegations that [Mother] struck her children at recent visits and during an interactional evaluation with Dr. Rosenblum. Dr. Rosenblum recommended that visits be reduced to monthly. [The juvenile] court issued an Order on October 23, 2009, reducing [Mother's] visits pending the next review hearing. On November 20, 2009, [the juvenile] court found that [Mother] had minimal compliance with the permanency plan in that she continued to struggle with dual diagnosis issues as well as continued involvement in a relationship, which is characterized by domestic violence. [Mother's] visitation was to remain monthly for the next two months and thereafter reduced to quarterly pursuant to the goal of adoption and recommendations of Dr. Rosenblum. On November 20, 2009, Dr. Rosenblum's evaluation reports conducted on 9/23/2009, 9/29/2009 and 10/7/2009, were admitted in to evidence. The [petition to involuntarily terminate Mother's parental right's] with regard to this child was filed on 2/17/2010. [Although the orphans' court granted the petition to terminate Mother's parental rights, the Superior Court vacated the orphans' court's order on procedural grounds and remanded for further proceedings. *See In re W.H.*, 1597 WDA 2009, 6 A.3d 578 (filed July 29, 2010) ].

On April 14, 2010, a Permanency Review Hearing took place before Hearing Officer Hobson. The court again found that [Mother] had made minimal progress with complying with her permanency plan. The children were to remain in their pre-adoptive foster home and [Mother's] visits were reduced to quarterly.

On April 26, 2010, CYF filed a Motion to Permit Psychotropic Medication for Mental Health Treatment that was heard by [the juvenile] court on May 7, 2010. After a hearing and the presentation of evidence by CYF [the juvenile] court ordered that the psychiatrist at Glade Run Lutheran Services [ ("Glade Run") ] was granted permission to prescribe medication, for the purpose of W.H.'s mental health treatment. In addition the order also provided that the foster parents and school nurse had permission to administer any and all prescriptions. On May 28, 2010, [Mother's] legal counsel presented a Motion for A Second Opinion To Prescribe Psychotropic Medication. [The juvenile] court granted [Mother's] motion and ordered CYF to obtain a second medical opinion as to whether W.H. should be prescribed and administered psychotropic medication with the results forwarded to [Mother] and her counsel.

On June 4, 2010, [Mother's] legal counsel presented an Emergency Motion For Stay of [the juvenile] court's May 7, 2010 order to prescribe and administer psychotropic medication for child pending the second medical opinion ordered on May 28, 2010. [Mother's] Motion For Stay, was denied by [the juvenile] court on June 4, 2010. On June 4, 2010, [Mother] filed a Notice of Appeal from [the] May 7, 2010 order. [That appeal was listed on the Superior Court docket at 886 WDA 2010.]

Trial Court Opinion, 7/6/10, at 1–3 (footnotes omitted). Thereafter, on June 30, 2010, the juvenile court granted CYF's emergency motion to cancel an appointment that Mother had scheduled for W.H. to begin therapy at Mercy Behavioral Health. The trial court found that the

appointment was not consistent with its May 28, 2010 order directing CYF to obtain a second medical opinion regarding psychotropic medication. Mother's appeal from the June 30, 2010 order was listed on our docket at 1128 WDA 2010. This Court consolidated the two appeals *sua sponte.* Meanwhile, on December 30, 2010, the orphans' court entered an order terminating Mother's parental rights to W.H. As of the date of this writing, Mother's appeal from the order terminating her parental rights is pending before another panel of this Court at 146 WDA 2011.

■ On November 19, 2010, CYF filed a motion to dismiss the appeal docketed at 886 WDA 2010 since Mother filed her brief one day late and because the brief referred to prior juvenile court matters that did not have a discernable relationship to the issues on appeal. CYF also asserted that the brief cited to a supposed reproduced record that Mother failed either to file with this Court or serve on the agency. However, since neither the brief's untimeliness nor the references therein to extraneous juvenile court proceedings or the non-existent reproduced record affected our ability to conduct meaningful appellate review, we decline to dismiss the appeal on either of those bases. Similarly, to the extent that CYF complains that Mother failed to file a reproduced record in this case, we observe that Mother, who is proceeding *in forma pauperis* ("IFP"), was not required to reproduce the record. *See* Pa.R.A.P. 2151(b). Accordingly, for all of the reasons mentioned above, we deny CYF's motion to dismiss the appeal listed at 886 WDA 2010.

■ However, before addressing the merits of Mother's appeals, we observe that Mother's appeal from the June 30, 2010 order granting CYF's petition to cancel the appointment she scheduled for a second opinion is moot. "An issue before a court is moot if in ruling upon the issue the court cannot enter an order that has any legal force or effect." *Johnson v. Martofel,* 797 A.2d 943, 946 (Pa.Super.2002). Herein, approximately one month after the juvenile court entered the pertinent order, CYF secured a second medical opinion regarding psychotropic medication from Gary Vallano, MD. Hence, regardless of our determination on appellate review, we cannot issue any ruling that would have any legal effect over the court's decision to cancel the appointment for a second opinion that Mother scheduled at Mercy Behavioral Health. Accordingly, we dismiss the appeal listed at 1128 WDA 2010 as moot.[1]

■ Next, we confront whether the May 7, 2010 order, permitting the Glade Run psychiatrist to prescribe psychotropic medication to W.H., was appealable pursuant to Pa.R.A.P. 341. This question, which implicates our jurisdiction, may properly be raised by the court *sua sponte. See Mensch v. Mensch,* 713 A.2d 690, 691 (Pa.Super.1998). Under Pennsylvania law, an appeal may be taken only from an interlocutory order appealable as of right, a final order, a collateral order, or an interlocutory order by permission. *Radakovich v. Radakovich,* 846 A.2d 709, 714 (Pa.Super.2004); Pa.R.A.P. 311, Pa.R.A.P. 312, Pa.R.A.P. 341. As the May 7, 2010 order is not a final order or a interlocutory order appealable by right or permission, we must determine whether the order is reviewable as a collateral order.

1. Additionally, finding that the June 30, 2010 order canceling the appointment that Mother scheduled for a second opinion is neither a final order nor an interlocutory order that is appealable as of right or by permission, we would be constrained to quash the appeal even if we determined the issue raised therein was not moot.

Our Supreme Court codified the collateral order doctrine into Pa.R.A.P. 313. Rule 313 provides as follows:

(a) **General rule.** An appeal may be taken as of right from a collateral order of an administrative agency or a lower court.

(b) **Definition.** A collateral order is an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost.

Pa.R.A.P. 313.

■ This Court previously explained the collateral order doctrine as follows:

The "collateral order doctrine" exists as an exception to the finality rule and permits immediate appeal as of right from an otherwise interlocutory order where an appellant demonstrates that the order appealed from meets the following elements: (1) it is separable from and collateral to the main cause of action; (2) the right involved is too important to be denied review; and (3) the question presented is such that if review is postponed until final judgment in the case, the claimed right will be irreparably lost. *See* Pa.R.A.P. 313; *see also Witt v. LaLonde*, 2000 PA Super 347, 762 A.2d 1109, 1110 (Pa.Super.2000) (citations omitted).

*In Re J.S.C.*, 851 A.2d 189, 191 (Pa.Super.2004). Our Supreme Court has directed that Rule 313 be interpreted narrowly so as not to swallow the general rule that only final orders are appealable as of right. *Geniviva v. Frisk*, 555 Pa. 589, 725 A.2d 1209, 1214 (1999). To invoke the collateral order doctrine, each of the three prongs identified in the rule's definition must be clearly satisfied. *J.S. v. Whetzel*, 860 A.2d 1112, 1117 (Pa.Super.2004).

The order at issue in this appeal satisfies Rule 313. The order fulfills the first prong because the issue of W.H.'s mental health treatment is separable from and collateral to the principal issue during the dependency proceedings, facilitating permanency. Next, we observe that Mother's right to appeal from the juvenile court's decision to prescribe psychotropic medication is too important to be denied review, especially in light of Mother's reservation of authority to make medical and education decisions during her son's dependency placement. Finally, we observe that Mother's requested remedy in preventing CYF from potentially soiling W.H.'s medical record by administering psychotropic medication might be irreparably lost if review is postponed until final judgment is entered on W.H.'s dependency disposition. Thus, we conclude the May 7, 2010 order satisfied all three prongs of the collateral order doctrine. *See Nagle v. Nagle*, 871 A.2d 832 (Pa.Super.2005) (order directing that children receive and maintain dual citizenship and dual passports qualified as collateral order for purposes of appeal in custody dispute); *Matter of T.R.*, 445 Pa.Super. 553, 665 A.2d 1260, 1263 (1995), *rev'd on other grounds, In re T.R.*, 557 Pa. 99, 731 A.2d 1276 (1999) (order directing mother of dependent child to submit to psychological evaluation is an appealable collateral order that is separable from underlying dependency proceeding). Hence, the appeal is proper.

Mother presents the following issues for our review:

1. Whether the record fails to support a finding that it was in the child's best [i]nterest to grant [CYF's] motion to override [Mother's] opposition to prescribe and administer psychotropic medication [to] her son, W.H., age 8?

2. Whether the May 7, 2010 order was vague, overbroad and ambiguous, which did not serve or protect the best interest or welfare of the child?

3. Whether the court abused its discretion when it capriciously disregarded [Mother's] assertion [that] the Glade Run psychiatrist expressed a belief that the court "ordered" the psychiatrist to prescribe psychotropic medication for W.H., as the court denied [Mother's] motion to "stay" its May 7 order pending outcome of [the juvenile] court's May 28 order for a second medical opinion?

4. Whether [CYF] and [the] juvenile court abused [their] discretion and capriciously disregarded a disclosure that foster mother concealed her use of sleep aids for W.H. from the child's Glade Run psychiatrist and case worker?

Mother's brief at 3. Although Mother's brief presented a single, disjointed argument covering all the foregoing points to varying degrees, we address the issues *seriatim.*

As presented in her statement of questions involved, Mother's first issue appears to challenge whether the record supports the juvenile court's decision to permit Glade Run to prescribe psychotropic medication to W.H. and to allow the foster parents to administer it. However, the crux of Mother's argument is that the juvenile court lacked the authority to dictate the course of W.H.'s medical treatment. Mother also asserts that the juvenile court ignored due process protections our Supreme Court established in *In re F.C. III,* 607 Pa. 45, 2 A.3d 1201 (2010) relating to the involuntary civil commitment of a minor to a drug and alcohol treatment facility. Finally, she contends that CYF violated its regulations under 55 Pa.Code § 3130.91 by failing to seek her consent prior to petitioning the juvenile court for relief.

We conduct our review according to the following standard:

We must accept the facts as found by the trial court unless they are not supported by the record. Although bound by the facts, we are not bound by the trial court's inferences, deductions, and conclusions therefrom; we must exercise our independent judgment in reviewing the court's determination, as opposed to its findings of fact, and must order whatever right and justice dictate. We review for abuse of discretion.

*In re F.B.,* 927 A.2d 268, 272 (Pa.Super.2007) (internal citations and quotation marks omitted).

Our scope of review in child dependency cases "is limited in a fundamental manner by our inability to nullify the fact-finding of the lower court." *In re Read,* 693 A.2d 607, 610 (Pa.Super.1997). We accord great weight to the hearing judge's findings of fact because he/she is in the best position to observe and rule upon the credibility of the witnesses. *Id.* "Relying on this unique posture, we will not overrule the findings of the trial court if they are supported by competent evidence." *Id.*

*In re J.G.,* 984 A.2d 541, 546 (Pa.Super.2009) (*en banc* ).

Upon review of the pertinent legal principles and the certified record, we find that both the law and the evidence support the juvenile court's decision. First, the juvenile court had authority to permit W.H.'s psychiatrist to prescribe medication pursuant to the Juvenile Act, 42 Pa.C.S. § 6339(b). The relevant section of the Juvenile Act provides:

During the pendency of any proceeding the court may order the child to be examined at a suitable place by a physi-

cian or psychologist and may also order medical or surgical treatment of a child who is suffering from a serious physical condition or illness which in the opinion of a licensed physician requires prompt treatment, even if the parent, guardian, or other custodian has not been given notice of a hearing, is not available, or without good cause informs the court of his refusal to consent to the treatment.

42 Pa.C.S. § 6339(b). Thus, notwithstanding Mother's objections, the juvenile court had authority to permit W.H.'s psychiatrist to prescribe medication if the psychiatrist believed that W.H.'s condition required prompt medical treatment.

█ In addition, Mother's reliance upon the Mental Health Procedures Act ("MHPA"), 50 § 7101 *et seq.* and the Pennsylvania Drug and Alcohol Abuse Control Act ("ACT 53"), 71 P.S. § 1690.112a, which both relate to certification procedures for involuntary commitment, is misplaced. As the MHPA and ACT 53 address involuntary civil commitment to either a mental health facility or a drug and alcohol treatment center, both are patently inapplicable to this case, which does not concern a civil commitment. The procedures outlined by those two statutes regarding involuntary civil commitments clearly do not govern the juvenile court's decision to permit W.H.'s psychiatrist to prescribe medication.

█ Similarly, Mother's contention that CYF violated the Department of Public Welfare's ("DPW") regulations regarding the appropriate procedure to obtain a parent's consent to medical treatment is also unavailing. Mother asserts that CYF "did not seek [her] consent, pursuant to DPW regulation 55 Pa.Code § 3130.91, a condition precedent required to authorize [CYF] to exceed 'ordinary' medical care of W.H. . . . ." Mother's brief at 14. However,

as noted *infra,* the record belies this assertion.

The regulation outlining the procedure to obtain consent to treat a minor in the agency's custody is as follows:

> The county agency shall comply with the following requirements relating to consent for medical and dental examination and treatment prior to undertaking to furnish the treatment or examination of a child:
>
> . . . .
>
> (2) If the child is in legal custody of the county agency under 42 Pa.C.S. §§ 6301–6365 (relating to the Juvenile Act):
>
> (i) Authorize routine treatment.
>
> (ii) Obtain consent for an instance of nonroutine treatment from the child's parent.
>
> (iii) Obtain an order of the court authorizing nonroutine treatment if the child's parent refuses, or cannot be located to provide consent.

55 Pa.Code § 3130.91. Herein, CYF followed the appropriate regulations and employed the correct procedure. CYF attempted to obtain Mother's consent for W.H.'s nonroutine treatment; however, after Mother unequivocally rejected the psychiatrist's recommendation, CYF obtained a court order consistent with § 3130.91(iii) that authorized the prescription medication. Accordingly, Mother's assertion that CYF followed an improper procedure fails.

█ Moreover, the certified record supports the juvenile court's decision to grant CYF's motion to prescribe the medication. The juvenile court explained its reasoning as follows:

> Based on the evidence presented at the May 7, 2010 hearing this court was presented with clear and convincing evidence that it was in the child's best

interest that he be prescribed and start to take psychotropic medication on a trial basis, without delay, to address his ADHD condition. CYF provided evidence that safeguards would be implemented to protect the child from any possible, unintended side effects in which the child's course of treatment would be closely monitored by the child's psychiatrist, therapist and primary care physician. In addition, it was emphasized that the medication would be on a trial basis to determine whether the drug was having a positive effect on the child's ADHD symptoms. This court believes that in this case[, Mother's] blanket objection to the administration of psychotropic medication to her son is misplaced....

Trial Court Opinion, 7/6/10, at 5.

During the evidentiary hearing, CYF caseworker Anne Schlegel testified that Lubna Bukhari, M.D., the psychiatrist overseeing W.H.'s ongoing evaluation and treatment at Glade Run diagnosed him with attention deficit hyperactivity disorder ("ADHD") and obsessive compulsive disorder ("OCD"), and she "highly recommend[ed] ... [s]ynthroid medication to help his behavior." N.T., 5/7/10, at 5–6. Ms. Schlegel explained that Dr. Bukhari spoke to Mother about the recommendation and that Mother "adamantly refused" to consent to any medication to address these issues. *Id.* at 6. Ms. Schlegel then indicated that Dr. Bukhari recommended a trial of Adderall or Ritalin instead. *Id.* at 7. Thereafter, W.H. would follow up with Dr. Bukhari, his therapist, and his primary care physician. *Id.* at 15. During cross-examination, Ms. Schlegel further elucidated that in light of Mother's adamant objection to medication, Dr. Bukhari refused to write a prescription without a court order. *Id.* at 14.

The juvenile court also received Dr. Bukhari's most recent psychiatric evaluation report, dated April 16, 2010, during the evidentiary hearing. While the report is not included in the certified record, Ms. Schlegel discussed the contents of the report during her testimony and indicated that Dr. Bukhari had an extensive basis for her recommendation.[2] *Id.* at 9–11, 13–14. Specifically, Ms. Schlegel testified Dr. Bukhari performed the initial evaluation and therapy recommendation for W.H. in 2008, and she has treated him periodically throughout his placement. *Id.* at 10. In making the recommendation for medication, Dr. Bukhari also considered a teacher's survey regarding W.H.'s behavior in the classroom, as well as observations by Glade Run's case manager and W.H.'s foster mother. *Id.* at 11. Those reports indicated that W.H.'s condition caused him to act out at home and in the classroom. *Id.* at 9. Similarly, he is fidgety and easily distracted. *Id.* at 6, 9. Accordingly, Dr. Bukhari concluded that a mild stimulant should be prescribed on a trial basis. As the competent evidence of record supports the juvenile court's determination that it was in W.H.'s best interest to address his condition with psychotropic

---

2. Although Mother now complains that the juvenile court erred in permitting CYF to introduce the substance of the psychiatric evaluation without presenting Dr. Bukhari as a witness, Mother failed to object during the evidentiary hearing to the admissibility of the psychiatric report or, more importantly, to Ms. Schlegel's testimony about its contents. Accordingly, the issue is waived. *Gaudio v. Ford Motor Co.*, 976 A.2d 524, 547 (Pa.Super.2009) (failure to object to admission of evidence during trial results in waiver of issue on appeal). We observe that while Mother assailed the form of CYF's motion because it did not contain a verification by Dr. Bukhari, pursuant to Pa.R.J.C.P. 1344(C), which certified that the facts contained therein were true and correct, she did not raise a specific objection as to the report's admissibility. *See* N.T., 5/7/10, at 17.

medication on a trial basis, we will not disturb it.

▮▮▮ In her second issue listed in the statement of questions presented, Mother contends that the juvenile court's order was unconstitutionally vague, overbroad, and ambiguous and did not serve to protect W.H.'s best interest. However, Mother does not advance any specific argument in her brief to support her claims. Instead, she merely repeated the terms of the order and then made a totally unrelated and inaccurate assertion that the juvenile court abused its discretion when it compelled the medication without an evidentiary hearing. While we would normally find this issue waived due to Mother's utter failure to present a cogent legal argument or cite any legal authority,[3] in an abundance of caution, we address Mother's bare claims of vagueness, and again, we disagree.

The juvenile court's May 7, 2010 order reads, in pertinent part, as follows:

> AND NOW, to-wit, this 7 of May 2010, after a hearing and/or review in the above-captioned matter and upon proper showing thereon, IT IS HEREBY ORDERED:
>
> . . . .
>
> Luban Bukhari, MD, a psychiatrist at Glad Run Lutheran Services, has permission to prescribe medication for [W.H.] for the purpose of his mental health treatment, and that [the foster parents] and/or the [school nurse] has permission to administer any and all prescriptions.

> After Hearing[.]

Trial Court Order, 5/7/10, at 1.

A cursory review of the order reveals that the juvenile court empowered Dr. Bukhari to treat W.H.'s mental health condition with a prescription medication despite Mother's refusal to consent to treatment and authorized W.H.'s foster parents and school health officials to administer the medication. As noted, the crux of Mother's precise assertion is unknown because she failed to level any argument in her brief. Nevertheless, to the extent that Mother presumably infers that the order did not identify the specific type of medication that would be prescribed or define the precise dosage, we find the order is not unnecessarily vague or ambiguous. Instead, the order is sufficiently flexible to permit Dr. Bukhari to make the relevant mental health determinations in light of her professional training and experience. As the order clearly permits Dr. Bukhari to prescribe medication for W.H.'s mental health condition without having to obtain Mother's consent to treatment, we reject Mother's assertion that the order was too vague or ambiguous.

Finally, we observe that the last two issues that Mother raises concern matters that are not of record in this case because they occurred after the juvenile court entered the May 7, 2010 order. Mother's later-arising issues assert (1) an allegation that the juvenile court disregarded her self-serving statement that Dr. Bukhari believed that the juvenile court ordered her to prescribe medication to W.H. and (2) that CYS ignored a disclosure on a intake form that revealed that the foster

---

**3.** "[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived." *In re A.C.,* 991 A.2d 884, 897 (Pa.Super.2010) (quoting *Commonwealth v. Johnson,* 604 Pa. 176, 985 A.2d 915, 924 (2009)); *see also* Pa.R.A.P. 2119(a) (argument section of appellate brief shall contain discussion of issues raised therein and citation to pertinent legal authorities).

mother concealed information from Dr. Bukhari concerning W.H.'s use of sleep aids. However, as both CYS and the juvenile court point out, neither of these assertions was before the juvenile court when it entered the May 7, 2010 order; therefore, it could not have ignored the allegations in fashioning the underlying order. Likewise, as an error correcting court, we are not in a position to determine the veracity of either of the allegations at this juncture. Hence, we conclude that Mother's final two complaints, regarding events that occurred after the order was entered, are not subject to this appeal.

Thus, for all of the foregoing reasons, we affirm the juvenile court order authorizing Dr. Bukhari to prescribe medication to treat W.H.'s mental health condition without Mother's consent.

The May 7, 2010 order is affirmed. Appeal filed at 1128 WDA 2010 is dismissed as moot. Motion to dismiss the appeal at 886 WDA 2010 is denied.