2022 PA Super 103

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RAYMOND TAYLOR | : | |
| | : | |
| Appellant | : | No. 1167 MDA 2021 |

Appeal from the Judgment of Sentence Entered April 22, 2021
In the Court of Common Pleas of Lackawanna County Criminal Division at
No(s):  CP-35-CR-0000551-2020

BEFORE:   BENDER, P.J.E., STABILE, J., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.:                **FILED: JUNE 3, 2022**

Appellant, Raymond Taylor, appeals from the April 22, 2021, judgment of sentence entered in the Court of Common Pleas of Lackawanna County following his conviction by a jury on the charges of rape of a child, involuntary deviate sexual intercourse with a child, statutory sexual assault, unlawful contact with a minor, sexual assault, endangering the welfare of a child, and corruption of minors.[1]  After a careful review, we affirm.

The trial court has aptly summarized the relevant facts and procedural history as follows:

In December [of] 2019, [Appellant] was babysitting C.R., who was his fiancé's cousin's four-year-old daughter. N.T., 12/7/20, [at] 118.  He babysat her in his home while her parents

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 3131(c), 3123(b), 3122.1(b), 6318(a)(1), 3124.1, 4304(a)(1), and 6301(a)(1)(i), respectively.

were at work. [*Id.*] Soon thereafter, C.R. was sitting on her father's…lap, when she grabbed his genitals. [*Id.*] at 119. He thought she was going to try and put her mouth on his penis. [*Id.*] [He] told his wife about the incident. [*Id.*] at 120. They had a conversation with [C.R.] during which C.R. stated, "Uncle Ray sticks his cock in my mouth." [*Id.*]. [C.R.'s parents] were both shocked by the statement. [*Id.*] [C.R.] subsequently made similar statements to her [paternal] grandfather…. [*Id.*] at 136. At that point, [C.R.] was taken to the Children's Advocacy Center ("CAC") where she made a similar disclosure. [*Id.*] at 121.

Due to the above allegations, on December 18, 2019, [Appellant] appeared at the Carbondale Police Department at the request of Detective Timothy Mackrell. N.T., 12/9/20, at 15. Detective Mackrell began the interview by advising [Appellant] of his *Miranda* rights. [*Id.*] at 12. The first part of the videotaped interview lasted approximately one hour and nine minutes. N.T., 12/8/20, at 40. In the first part of the interview, [Appellant] denied the allegations. N.T., 12/9/20, at 19. He agreed to take a Computer Voice Stress Analysis test ("CVSA"). The pre-CVSA interview, the CVSA, and the post-CVSA interviews were conducted by Detective Jess Van Deusen of the Carbondale Police Department. [*Id.*] at 121-22. This portion was not videotaped and lasted approximately one hour and ten minutes. N.T., 12/8/20, at 6. The detectives then informed [Appellant] that he failed the exam. [*Id.*] at 4. Detective Mackrell resumed questioning [Appellant] for approximately thirty minutes. N.T., 12/9/20, at 33. During this portion of the unrecorded interview, [Appellant] confessed. Detective Mackrell requested that [Appellant] repeat his admission statement on videotape. [*Id.*] at 27. The detective had trouble turning the recorder back on, so he enlisted the help of two other Carbondale Police Officers, along with [Appellant] himself. N.T., 12/8/20, at 32. [Appellant] then repeated his admission on tape in a recording that lasted one minute and eighteen seconds long.

On or about December 18, 2019, [Appellant] was arrested for rape and related offenses. On the eve of trial, the Commonwealth filed an amended information, which listed the [charges indicated *supra*]. On December 9, 2020, after a three-day jury trial, the jury returned a verdict of guilty on all counts.

On April 22, 2021, the trial court imposed the following sentence: On count I, rape of a child, ten (10) to twenty (20) years in a state correctional institution[;] count II merged with count I, [so] no further penalty was imposed[;] count III,

statutory sexual assault, three (3) to six (6) years [in prison] consecutive to count I[;] count IV, unlawful contact with a minor, three (3) to six (6) years [in prison], also consecutive to counts I and III[;] count V merged with count III, [so] no further penalty was imposed[;] count VI, endangering the welfare of a child, one (1) to two (2) years [in prison] consecutive to counts I, III, and IV[;] count VII, corruption of minors, one (1) to two (2) years [in prison] consecutive to counts I, III, IV, and VI[.]

The aggregate sentence imposed [was] 18-36 years to be served in a state correctional facility. Additionally, [Appellant was ordered to] register as a Tier III lifetime registrant pursuant to the Adam Walsh Child Protection and Safety Act pursuant to 42 Pa.C.S.A. § 9799.10 *et seq.*

[On May 14, 2021, Appellant filed a counseled motion seeking an application for extension of time to file post-sentence motions.] On May 19, 2021, the [trial] court [expressly] granted [Appellant's] request for additional time to file post-sentence motions. [On June 1, 2021, Appellant filed a counseled post-sentence motion, and the trial court denied the motion on August 10, 2021.] Appellant filed a [notice of] appeal on August 31, 2021.[2] [On that same date, the trial court ordered Appellant to file a Pa.R.A.P. 1925(b) statement, and Appellant timely complied. The trial court filed a responsive Rule 1925(a) opinion on October 26, 2021.]

---

[2] We note that, generally, a post-sentence motion must be filed within ten days after the imposition of sentence, and to be timely, an appeal must be filed within thirty days of the entry of the order deciding the motion. Pa.R.Crim.P. 720(A)(2)(a). An untimely post-sentence motion does not toll the time to file an appeal. **Commonwealth v. Green**, 862 A.2d 613, 618 (Pa.Super. 2004) (*en banc*). However, where the defendant files a separate and distinct request to file a post-sentence motion *nunc pro tunc*, and the trial court expressly grants the request within thirty days of the imposition of sentence, the time to file an appeal may be tolled. **Commonwealth v. Capaldi**, 112 A.3d 1242 (Pa.Super. 2015). Here, Appellant filed a separate motion seeking to file post-sentence motions *nunc pro tunc*, and the trial court expressly granted the motion within thirty days of the imposition of sentence. Appellant then filed his post-sentence motion within ten days of being granted *nunc pro tunc* relief, and he filed his notice of appeal within thirty days of the order denying his post-sentence motion. Thus, this appeal is properly before us. **See id.**

Trial Court Opinion, filed 10/26/21, at 1-4 (unnecessary parenthesis omitted) (footnote added).

On appeal, Appellant sets forth the following issues in his "Statement of the Questions Involved" (verbatim):

1. Did the trial court commit reversible error when it violated the coordinate jurisdiction rule?
2. Did the trial court commit reversible error when it denied a trial continuance to the defense?
3. Did the trial court commit reversible error when it found C.R. competent to testify?
4. Did the trial court commit reversible error when it made evidentiary errors at trial?
5. Did the trial court commit reversible error when it did not issue a missing evidence and/or missing witness instruction to the jury?
6. Did the trial court arrive at a manifestly unreasonable sentence for the Defendant considering the discretionary aspects of sentencing?

Appellant's Brief at 8-9 (suggested answers omitted).

In his first issue, Appellant contends the Honorable Margaret Moyle violated the coordinate jurisdiction rule when she granted, in part, the Commonwealth's motion for reconsideration as it relates to an order entered by then President Judge Michael J. Barrasse. We conclude Appellant is not entitled to relief on this claim.

In the case *sub judice*, the Commonwealth filed a motion *in limine* seeking to introduce evidence of other crimes pursuant to Pa.R.E. 404(b). Specifically, the Commonwealth sought to admit testimony from D.D. and

S.T., both of whom reported that Appellant sexually abused them when they were young children and in his care. Judge Barrasse denied the motion *in limine*, thus precluding the testimony.

However, the Commonwealth filed a timely motion for reconsideration of Judge Barrasse's order. The next day, to assist the trial court in conducting several jury trials scheduled for December 7, 2020, Judge Barrasse transferred Appellant's case to Judge Moyle for trial. **See** Trial Court Opinion, filed 10/26/21, at 6. Judge Barrasse specifically instructed Judge Moyle to rule on the Commonwealth's outstanding motion for reconsideration. **See id.**

Accordingly, Judge Moyle held oral argument on the Commonwealth's motion for reconsideration and granted, in part, the motion. Specifically, Judge Moyle held that D.D. and S.T. could testify to Appellant's sexual abuse, but she limited the testimony to acts committed against them as of the time they were five years old. Judge Moyle specifically excluded testimony related to Appellant's sexual abuse of D.D. after he turned five years old.

Appellant now contends that, under the coordinate jurisdiction rule, Judge Moyle was required to adopt Judge Barrasse's order, which denied the Commonwealth's motion *in limine* in its entirety, when the case was transferred to her to rule on the Commonwealth's motion for reconsideration.

Initially, we note Appellant raised his coordinate jurisdiction challenge for the first time in his post-sentence motion. That is, despite Judge Moyle advising the parties that the case had been transferred to her docket, she

would be ruling on the Commonwealth's motion for reconsideration, and she then held a pre-trial hearing on the motion, Appellant did not lodge a timely objection based on the coordinate jurisdiction rule.[3]

Thus, this issue has been waived. **See Commonwealth v. Sanchez**, 623 Pa. 253, 82 A.3d 943 (2013) (holding that, in order to preserve an issue, an objection must be lodged as soon as is practical); **Keffer v. Bob Nolan's Auto Service, Inc.**, 59 A.3d 621, 629 (Pa.Super. 2012) (finding issue based on coordinate jurisdiction rule to be waived where it was raised for the first time in post-trial motions).

Nevertheless, even if Appellant has properly preserved this claim, we conclude Appellant's claim is meritless.[4] It is well-settled that the coordinate jurisdiction rule is part of the law of the case doctrine and prohibits a court involved in the later phases of a litigated matter from reopening questions decided by another judge of the same court in earlier phases of the matter. **See Commonwealth v. Starr**, 541 Pa. 564, 664 A.2d 1326 (1995). In deciding whether to apply the coordinate jurisdiction rule, the court must look to where the rulings occurred in the context of the procedural posture of the

---

[3] Appellant acknowledges as much in his appellate brief. **See** Appellant's Brief at 26 (arguing that, if the trial court would have granted Appellant's pre-trial request for a continuance, defense counsel would have raised the coordinate jurisdiction rule).

[4] Appellant's claim raises a question of law, and therefore, our standard and scope of review is *de novo* and plenary. **Commonwealth v. Viglione**, 842 A.2d 454 (Pa.Super. 2004) (*en banc*).

- 6 -

case. *See Riccio v. American Republic Ins. Co.*, 550 Pa. 254, 705 A.2d 422 (1997).

Generally, the coordinate jurisdiction rule commands that, upon transfer of a matter between trial judges of coordinate jurisdiction, a transferee trial judge may not alter resolution of a legal question previously decided by a transferor trial judge. *See Starr*, *supra*. As our Supreme Court stated in *Starr*, "[J]udges of coordinate jurisdiction sitting in the same case should not overrule each others' decisions." *Id.* at 1331.

"Departure…is allowed only in exceptional circumstances such as where there has been an intervening change in the controlling law, a substantial change in the facts or evidence giving rise to the dispute in the matter, or where the prior holding was clearly erroneous and would create a manifest injustice if followed." *Id.* at 1332. The rule serves "not only to promote the goal of judicial economy" but also: "(1) to protect the settled expectations of the parties; (2) to ensure uniformity of decisions; (3) to maintain consistency during the course of a single case; (4) to effectuate the proper and streamlined administration of justice; and (5) to bring litigation to an end." *Id.* at 1331.

In some circumstances, however, application of the rule can "thwart the very purpose the rule was intended to serve, *i.e.,* that judicial economy and efficiency be maintained." *Salerno v. Philadelphia Newspapers, Inc.,* 546 A.2d 1168, 1170 (Pa.Super. 1988). Thus,…the rule does not apply where two

motions differ in kind, then a second judge is not precluded from granting relief though another judge has denied an earlier motion. ***Goldey v. Trustees of University of Pennsylvania***, 544 Pa. 150, 675 A.2d 264, 267 (1996). The rule does not apply when distinct procedural postures present different considerations, then a substituted judge may correct mistakes made by another judge at an earlier stage of the trial process, or, perhaps more accurately, may revisit provisional rulings made earlier in the litigation. ***See Riccio***, ***supra***.

In the case *sub judice*, in addressing Appellant's claim that Judge Moyle violated the coordinate jurisdiction rule, the trial court indicated:

> [The trial] court did not re-open an already settled issue. In this case, the previous Judge ruled on the Commonwealth's motion *in limine*, but relinquished jurisdiction before a ruling could be made on the Commonwealth's motion for reconsideration. As such, the coordinate jurisdiction rule was not violated. On December 4, 2020, [then] President Judge Barrasse notified [Judge Moyle] that he was relinquishing jurisdiction of the matter, and he specifically directed [her] to rule on the Commonwealth's motion for reconsideration. [The trial] court allowed both the defense and the Commonwealth to present additional oral argument prior to trial regarding the Commonwealth's motion for reconsideration. At oral argument, the Commonwealth submitted a proffer regarding S.T., stating that if called to testify, she would say she was five (5) years old when she was sexually assaulted by [Appellant], she was forced to remove her clothes, and [Appellant] penetrated her vagina with his penis. N.T., 12/7/20, at 17-18. She was in [Appellant's] home and in his care at the time of the assault. [***Id.***] at 18.
>
> Additionally, the Commonwealth proffered that D.D. would testify that when he also was five (5) years old he was left in [Appellant's] care while his mother was at work. [***Id.***] at 20. The Commonwealth proffered that D.D. would testify that [Appellant] touched his penis and forced D.D. to perform oral sex on him. [***Id.***] at 32. The Commonwealth argued these similarities [to the

instant matter] satisfied its burden under Rule 404(b) and that the evidence should be allowed to be admitted at trial[.] At the conclusion of oral argument, the [trial] court allowed the evidence after the Commonwealth agreed to modify its original proffer by significantly limiting the testimony of D.D.[5] More specifically, the [trial] court made the following finding:

> THE COURT: All right. If you're able to—I think that limiting the testimony to just that, that is enough similarity, and I would allow that.
>
> [ADA]: Okay.
>
> THE COURT: And allow [S.T.]. I think that the similarities are enough right there.
>
> [ADA]: Okay.
>
> THE COURT: The child is the same age, the child is known to [Appellant], [Appellant] is in a custodial capacity to each child, they're alone in [Appellant's] residence. And in two cases it's oral sex, and in one case its vaginal touching. I think those similarities right there are sufficient under the rules. I will allow it. I will not allow the Commonwealth to go beyond and into all that other stuff.

[*Id.*] at 31-32.

Initially, the Commonwealth sought to introduce Rule 404(b) evidence, which included several incidents that were dissimilar. At oral argument on the motion for reconsideration, [the trial] court granted the motion, in part, and denied it, in part. The [trial] court excluded the instance of alleged sexual abuse on D.D., which did not satisfy the strictures of Rule 404(b) that requires sufficiently similar evidence.

[Pa.R.E.] 404(b) provides "evidence of other crimes is admissible when it tends to prove a common plan, scheme, or

---

[5] In its motion *in limine*, the Commonwealth proffered that Appellant sexually abused D.D. until he was sixteen years old, and at times, he would dress D.D. in women's clothing. However, at the hearing on the motion for reconsideration, the Commonwealth proffered that, in order to establish the similarities between the instant case of sexual abuse and the abuse of D.D., the Commonwealth would limit D.D.'s testimony to the fact Appellant sexually abused him when he was five years old without mentioning the women's clothing. N.T., 12/7/21, at 29.

design embracing the commission of two or more crimes so related to each other that proof of one tends to prove the others." Pa.R.E. 404(b); ***Commonwealth v. Saez***, 225 A.3d 169, 178 (Pa.Super. 2019)[; ***Commonwealth v. O'Brien***, 836 A.2d 966 (Pa.Super. 2003) (two prior sexual assaults on minor boys admissible under common-scheme-or-plan exception in trial relating to assault on third minor boy).] In [the case *sub judice*], there were sufficient similarities in the newly proffered evidence presented at the motion for reconsideration. In light of the new proffer, [Judge Moyle] granted the Commonwealth's motion for reconsideration and allowed the evidence.

It is clear from the case law, additional oral argument on the motion for reconsideration, and the policy considerations behind the coordinate jurisdiction rule that [the trial] court acted properly. The [trial] court did not overturn a previous ruling made by a different judge but simply granted the motion for reconsideration. Additionally, [the trial] court was within the parameters of Rule 404(b) when it allowed the evidence as stated [*supra*], and for these reasons, [Appellant's] appeal regarding the coordinate jurisdiction rule and the admissibility of the Rule 404(b) evidence should be denied.

Trial Court Opinion, filed 10/26/21, at 7-10 (footnote omitted) (some citations to record omitted) (unnecessary parenthesis omitted) (footnote added).

We agree with the trial court's sound reasoning. Thus, we find Appellant is not entitled to relief on his challenge based on the coordinate jurisdiction rule. ***See Starr***, ***supra***.

In his second issue, Appellant contends the trial court erred in denying his motion for a continuance, which he made at the beginning of the pre-trial hearing before Judge Moyle regarding the Commonwealth's motion for reconsideration of Judge Barrasse's order denying the Commonwealth's motion *in limine*. Appellant's entire appellate argument regarding this issue is as follows (verbatim):

- 10 -

When the trial court erred by ruling in violation of the Coordinate Jurisdiction Rule, it then compounded its error by denying a defense motion for continuance.

Had the Court permitted the continuance, the defense would have raised the Coordinate Jurisdiction Rule violation issue, it could have been corrected, and the defense could also have addressed the expected testimony of [D.D.] and S.T., more thoroughly.

Ordinarily, denial of a continuance is within the sound discretion of the trial court, but it is reversible error and an abuse of discretion where the continuance requested is necessitated by a ruling of the trial court which misapplied the law. **Commonwealth v. Ross**, 57 A.3d 85 (Pa.Super. 2012) (*en banc*).

Here, defense counsel sought a continuance based on the ruling of the judge receiving transfer of the case which upended the decision of the transferring judge on the admissibility of evidence. That ruling violated the Coordinate Jurisdiction Rule[.] Therefore, the new ruling misapplied the law. A denial of a continuance under such circumstances permits a new trial. **Id.**

Appellant's Brief at 26-27 (citation to record omitted). We conclude Appellant is not entitled to relief.

Initially, as Appellant acknowledges, it is well-settled that the decision to grant or deny a request for a continuance is within the sound discretion of the trial court. **Commonwealth v. Pries**, 861 A.2d 951, 953 (Pa.Super. 2004). Discretion is abused when "the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record...." **Commonwealth v. Chambers**, 546 Pa. 370, 685 A.2d 96, 104 (1996) (quotation omitted).

Here, Appellant suggests he should have been granted a continuance so that he could have raised the alleged coordinate jurisdiction rule violation. Initially, we note Appellant did not lodge his request for a continuance based on this theory, and he raised the instant theory for the first time in his post-sentence motion.

That is, during the pre-trial hearing on the Commonwealth's motion for reconsideration, Appellant asked Judge Moyle that, "if [she was] going to change Judge Barrasse's ruling on the prior bad acts," he desired a continuance so that he could prepare for trial with the idea that the statements related thereto would be admissible. N.T., 12/7/20, at 4. Appellant did not inform the trial court he required a continuance to raise a theory regarding the coordinate jurisdiction rule.

Moreover, Appellant has not explained how he was prevented from raising the coordinate jurisdiction rule during the pre-trial hearing before Judge Moyle or why a continuance was necessary for him to do so. **See Pries**, **supra**. In any event, to the extent Appellant's request of a continuance is intertwined with his averments regarding an alleged coordinate jurisdiction rule violation, as indicated *supra*, we find there was no such violation.

Further, Appellant baldly claims that, had Judge Moyle granted his request for a continuance, he would have addressed the trial testimony of D.D. and S.T. "more thoroughly." Appellant's Brief at 26. However, aside from his bald allegation, Appellant has not explained on appeal how he would

have benefitted from a continuance in this regard. Thus, we conclude Appellant is not entitled to relief. **See Pries**, **supra**.

In his third issue, Appellant contends the trial court erred in finding C.R., who was five years old at the time of trial, competent to testify.

We review a competency ruling for an abuse of discretion. **Commonwealth v. Delbridge**, 578 Pa. 641, 855 A.2d 27, 34 n.8 (2003). "Most fundamentally, a trial court's judgment is manifestly unreasonable, and therefore an abuse of discretion, if it does not find support in the record." **Commonwealth v. D.J.A.**, 800 A.2d 965, 970 (Pa.Super. 2002) (*en banc*).

In Pennsylvania, competency is a threshold legal issue to be decided by the trial court. **Commonwealth v. Hutchinson**, 611 Pa. 280, 25 A.3d 277, 290 (2011). Although witnesses are generally presumed to be competent, Pennsylvania law presently requires that child witnesses be examined for competency. Pa.R.E 601(a). Our Supreme Court has explained, "[t]he capacity of young children to testify has always been a concern as their immaturity can impact their ability to meet the minimal legal requirements of competency." **Delbridge**, *supra*, 855 A.2d at 39.

> [W]here a child under the age of 14 is called to testify as a witness, the trial court must make an independent determination of competency, which requires a finding that the witness possesses (1) a capacity to communicate, including both an ability to understand questions and to frame and express intelligent answers; (2) the mental capacity to observe the actual occurrence and the capacity of remembering what it is that he or she is called to testify about; and (3) a consciousness of the duty to speak the truth.

- 13 -

*Commonwealth v. Walter*, 625 Pa. 522, 93 A.3d 442, 451 (2014).

"A competency hearing of a minor witness is directed to the mental capacity of that witness to perceive the nature of the events about which he or she is called to testify, to understand questions about that subject matter, to communicate about the subject at issue, to recall information, to distinguish fact from fantasy, and to tell the truth." *Hutchinson*, *supra*, 25 A.3d at 290 (citation omitted). Notably, a competency determination does not involve an assessment of credibility. *Walter*, *supra*, 93 A.3d at 451.

Here, in ruling on the competency issue, the trial court relevantly indicated the following on the record:

> THE COURT: Based on my…inquiry here in open court with the court reporter and [Appellant] present, I do find [C.R.] is competent to testify. She has exhibited the ability to answer questions and articulate the answers correctly.
>
> Is it daytime, night[.] Her baby Yoda is green. What her brother's and sister's names are, where she goes to school, the name of the van driver, the name of the teacher, what her favorite activity is in school, whether her brothers or sisters are older than her or younger than her. She was able to identify correctly what is a lie as opposed to what is telling the truth. And she—while she did say more than once telling a lie is good and bad, she did also articulate that telling a lie is bad, and that she is punished—she can be punished…if she does tell a lie or does something to break the rules. She has to sit in the choice chair. And the other comments that she made on the record.
>
> So based on the totality of it all, I do find that she is competent and will permit her to testify.
>
> [ADA]: Judge, I will also ask the record to reflect that a number of times she looked over to [Appellant] and then ultimately identified [Appellant].
>
> THE COURT: Yes. It was clear to the Court she spotted [Appellant] immediately, and she kept diverting her attention

- 14 -

away from—I sat in the opposite line of sight. She kept looking back over her shoulder to see [Appellant].

N.T., 12/7/20, at 59-60.

Further, in support of its competency determination, the trial court indicated the following in its opinion:

[T]he trial court held a competency hearing outside the presence of the jury and the court conducted an inquiry with the above-referenced competency test in mind. In the colloquy, the court assessed C.R.'s ability to accurately describe people, events, and relationships. N.T., 12/7/20, at 45-49. The court found C.R. was able to discern the differences between the truth and a lie, and C.R. recognized the duty to tell the truth. [*Id.*] at 44-56. The court entertained oral argument regarding C.R.'s competency and the court subsequently allowed her to testify in front of the jury. [*Id.*] at 58-61. The inquiry conducted supports [the trial] court's decision to allow her to testify at trial.

Trial Court Opinion, filed 10/26/21, at 12.

Our review of the record supports the trial court's determination. For example, during the competency hearing, C.R. testified she knows that a lie is "bad," and she gets in trouble when she tells a lie. N.T., 12/7/20, at 50-53. The trial judge asked her various questions regarding the time of day and the color of the judge's robe, and C.R. was able to identify which statements were lies. *Id.* at 50-51. Further, C.R. confirmed she knew who "Ray is," and she identified "Ray" by pointing at Appellant in the courtroom. *Id.* at 53. C.R. acknowledged she is in kindergarten, and she has to follow the school's rules, including being quiet and keeping her area clean. *Id.* at 54. She told the trial court that, if she does not follow the rules at school, she has to sit in a "choice

chair." **Id.** C.R. promised the trial court judge that, when she returned to court, she would tell the truth. **Id.** at 56.

The trial court analyzed the competency factors set forth in **Walter**, **supra**, and concluded that C.R. was able to communicate and accurately recall, as well as understood her duty to tell the truth. Our review of the record supports the trial courts findings, and we, thus, find no abuse of discretion. To the extent Appellant asks that we reweigh the evidence given during the competency hearing, we decline to do so. **See id.**

In his fourth issue, Appellant alleges various errors in the trial court's evidentiary rulings at trial. He suggests the trial court erred in playing Appellant's "confession" interview multiple times, placing restrictions on the defense as it relates to evidence regarding the voluntariness of Appellant's confession, denying defense counsel the opportunity to introduce Children and Youth "unfounded" reports as it relates to allegations of sexual abuse made by D.D. and S.T, denying defense counsel the opportunity to inquire into the substance of the discussion between Officer Van Deusen and Appellant, and denying defense counsel the opportunity to demonstrate Office Mackrell was dishonest or mistaken about the order of events in the interview. We find Appellant's issue to be waived.

It is well-settled that the failure to develop an adequate argument in an appellate brief may result in waiver of the claim under Pa.R.A.P. 2119. **Commonwealth v. Beshore**, 916 A.2d 1128, 1140 (Pa.Super. 2007) (*en*

*banc*) (citation omitted). "[A]rguments which are not appropriately developed are waived." ***Lackner v. Glosser***, 892 A.2d 21, 29–30 (Pa.Super. 2006) (citations omitted). "When issues are not properly raised and developed in briefs, or when the briefs are wholly inadequate to present specific issues for review, a Court will not consider the merits thereof." ***Commonwealth v. Maris,*** 629 A.2d 1014, 1017 (Pa.Super. 1993). "[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review that claim is waived." ***In re W.H.***, 25 A.3d 330, 339 n.3 (Pa.Super. 2011).

In the case *sub judice*, in his fourth issue, Appellant presents a list of alleged evidentiary errors. ***See*** Appellant's Brief at 33-35. However, aside from making bald assertions of error, Appellant has not developed his claims. He has not developed his argument or provided any meaningful discussion of relevant authority.[6] It is not this Court's duty to develop arguments for an appellant. ***See Maris***, ***supra***. The defects in Appellant's brief precludes us from conducting meaningful appellate review of this issue. ***In re W.H.***, ***supra***. Thus, we find Appellant's issue to be waived.

---

[6] The only authority provided by Appellant is for the general proposition that "the erroneous admission of harmful or prejudicial evidence constitutes reversible error." Appellant's Brief at 33 (citing ***Partlow v. Gray***, 165 A.3d 1013, 1016-17 (Pa.Super. 2017); ***Commonwealth v. Salazar***, 2018 WL 1477217 (Pa.Super. 3/27/18) (unpublished memorandum)).

In his fifth issue, Appellant alleges the trial court erred in refusing to give a missing evidence and/or missing witness jury instruction.[7]

As it relates to his allegation regarding the missing evidence instruction, Appellant's entire appellate argument is as follows (verbatim):

> The trial court erred in refusing a missing evidence instruction to the jury. R.R. 190a-238a. The defense is not at fault for the police failure to record the entirety of the interview with [Appellant]. While the Commonwealth is correct that certain portions of the recorded interview would not be permissible evidence because there would be no way to avoid the CVSA, the Commonwealth must suffer the consequence of not recording the entire interview through a missing evidence instruction.

Appellant's Brief at 35-36.

Aside from baldly asserting trial court error, Appellant has not developed his appellate argument regarding a missing evidence instruction. Specifically, he has not provided discussion of the claim with citation to relevant authority or otherwise developed the claim in a meaningful fashion capable of review. Thus, this issue has been waived on this basis. *See In re W.H.*, *supra*; *Beshore*, *supra*.

As it relates to his allegation regarding the missing witness instruction, Appellant's entire appellate argument is as follows (verbatim):

> The trial court erred in refusing an absence of witness instruction as to Officer Van Deusen. R.R. 190a-238a. Officer Van Deusen was not called by the Commonwealth to testify that he participated in the interview, nor that he met with and spoke with [Appellant], nor that he advised [Appellant] that he did not

---

[7] Appellant presents no citation to authority in his brief as it relates to his fifth issue, which spans one and one-half pages. Appellant's Brief at 35-36.

find [Appellant] to be credible in his denial of wrongdoing. Officer Van Deusen is a police officer and, while available to the defense, would be a natural and expected witness for the Commonwealth.

The defense need not prove affirmatively that the purported "confession" was voluntary, but rather, the duty is on the Commonwealth to establish it was voluntary. Failure to call Officer Van Deusen was a "hole" in the testimony that the defense was entitled to use in its efforts to demonstrate that the "confession" was not voluntary.

Appellant's Brief at 36.

Aside from baldly asserting trial court error, Appellant has not developed his appellate argument regarding a missing witness instruction. Specifically, he has not provided discussion of the claim with citation to relevant authority or otherwise developed the claim in a meaningful fashion capable of review. Thus, this issue has been waived on this basis. *See In re W.H.*, *supra*; *Beshore*, *supra*.

Further, we note we have reviewed the record, including the pages of the trial transcript cited by Appellant, and find no indication that Appellant requested a missing evidence or missing witness jury instruction. In any event, Appellant lodged no objection to the jury instruction after it was given by Judge Moyle. N.T., 12/9/20, at 76 (defense counsel indicating no objection to the jury instruction); 81 (defense counsel indicating he had nothing further to add before the trial court excused the jury). Thus, he has waived his challenges to the jury instruction on this basis as well. Pa.R.Crim.P. 647(C) ("No portions of the charge nor omissions from the charge may be assigned as error, unless specific objections are made thereto before the jury retires to

- 19 -

deliberate."); ***Commonwealth v. Sanchez***, 623 Pa. 253, 82 A.3d 943, 978 (2013) (holding specific exception shall be taken to the language or omission of language in a jury instruction in order to preserve challenges for appeal).

In his sixth claim, Appellant contends the trial court abused its discretion in imposing consecutive sentences. Specifically, Appellant avers the trial court erred when it ordered the sentences for counts I, III, IV, VI, and VII to run consecutively as opposed to concurrently to each other. He suggests that since all of the counts arose from a single incident the aggregate sentence is manifestly unreasonable.

Appellant's issues present a challenge to the discretionary aspects of his sentence. "[C]hallenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right." ***Commonwealth v. Derry***, 150 A.3d 987, 991 (Pa.Super. 2016) (citation omitted). Rather, before reaching the merits of such claims, we must determine:

> (1) whether the appeal is timely; (2) whether Appellant preserved his issues; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is inappropriate under the sentencing code.

***Commonwealth v. Corley***, 31 A.3d 293, 296 (Pa.Super. 2011) (citation omitted). Here, assuming, *arguendo*, all of these requirements have been met, we conclude Appellant's sentencing issue is meritless.

Our standard of review concerning the discretionary aspects of sentencing is as follows:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Hyland*, 875 A.2d 1175, 1184 (Pa.Super. 2005).

42 Pa.C.S.A. § 9721(b) offers the following guidance to the trial court's

sentencing determination:

> [T]he sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant.

42 Pa.C.S.A. § 9721(b).

> Furthermore,
>
> Section 9781(c) specifically defines three instances in which the appellate courts should vacate a sentence and remand: (1) the sentencing court applied the guidelines erroneously; (2) the sentence falls within the guidelines, but is "clearly unreasonable" based on the circumstances of the case; and (3) the sentence falls outside of the guidelines and is "unreasonable." 42 Pa.C.S.A. § 9781(c). Under 42 Pa.C.S.A. § 9781(d), the appellate courts must review the record and consider the nature and circumstances of the offense, the sentencing court's observations of the defendant, the findings that formed the basis of the sentence, and the sentencing guidelines. The weighing of factors under 42 Pa.C.S.A. § 9721(b) is exclusively for the sentencing court, and an appellate court may not substitute its own weighing of those factors. The primary consideration, therefore, is whether the court imposed an individualized sentence, and whether the sentence was nonetheless unreasonable for sentences falling outside the guidelines, or clearly unreasonable for sentences falling within the guidelines, pursuant to 42 Pa.C.S.A. § 9781(c).

*Commonwealth v. Bricker*, 41 A.3d 872, 875-76 (Pa.Super. 2012) (citations

omitted).

> When imposing sentence, a court is required to consider the particular circumstances of the offense and the character of the defendant. In considering these factors, the court should refer to the defendant's prior criminal record, age, personal characteristics and potential for rehabilitation. Where pre-sentence reports exist, we shall…presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors.

*Commonwealth v. Antidormi*, 84 A.3d 736, 761 (Pa.Super. 2014) (quotation marks and quotation omitted).

Moreover, we note the "imposition of consecutive rather than concurrent sentences lies within the sound discretion of the sentencing court." *Commonwealth v. Zirkle*, 107 A.3d 127, 133 (Pa.Super. 2013) (citation omitted). It is well-accepted "in imposing a sentence, the trial [court] may determine whether, given the facts of a particular case, a sentence should run consecutive to or concurrent with another sentence being imposed." *Commonwealth v. Wright*, 832 A.2d 1104, 1107 (Pa.Super. 2003).

Here, during the sentencing hearing, the trial court received evidence indicating that, in addition to the current victim, two other victims reported they had been sexually abused by Appellant when they were young children. N.T., 4/22/21, at 15. Paula Brust, a counselor in private practice and a member of the Sexual Offender Assessment Board, testified the fact Appellant has "multiple minor victims" makes him a greater risk to the community. *Id.* Further, Ms. Brust testified she reviewed Appellant's prior criminal history and

discovered he had been arrested for delivery of a controlled substance in 1991, arrested for dealing in stolen property in 1996, arrested for violating his probation in 1997, convicted of a theft offense in 1997, and arrested for possession of cocaine in 1998. *Id.* at 18-19. Ms. Brust noted Appellant was forty-five years old when he sexually assaulted the four-year-old victim, and Appellant suffers from post-traumatic stress disorder. *Id.* at 19-20.

The victim's father provided the trial court with a victim impact statement and testified at Appellant's sentencing hearing. He testified Appellant is related to him. He indicated that Appellant's sexual abuse of C.R. is "going to change her forever[, and] [s]he is never going to look at a man the same again moving forward in her life." *Id.* at 25. He testified Appellant destroyed C.R.'s innocence, as well as the relationship of "three generations of" a family. *Id.* at 26.

The victim's mother provided the trial court with a victim impact statement. She informed the trial court that, when she first learned of Appellant's sexual abuse of her daughter, she "passed out on the floor." *Id.* at 27. She told the trial court the victim will not sleep in her own bed, suffers nightmares, and will not wipe herself when she goes to the bathroom. *Id.*

The trial court provided Appellant with his right to allocution; however, Appellant declined to make a statement. *Id.* at 36. Defense counsel sought leniency and indicated that Appellant had not been involved in the criminal justice system since he was twenty-four years old in 1998. *Id.* He requested

that, since all of the charges stemmed from the same criminal incident, the trial court impose all sentences concurrently. *Id.*

The trial court indicated it had presided over Appellant's trial and provided the following reasoning in sentencing Appellant to consecutive sentences:

> [A]s [the victim's father] alluded to, this trial and this incident or incidents and the resulting trial—the resulting arrest, trial, and now today's proceedings have fractured a once unified family.
>
> So, there is collateral damage resulting from [Appellant's] acts. But this victim at a very tender age did have the fortitude to come into court and to testify in an open court in the presence of [Appellant].
>
> And at the end of the trial the jury after weighing the evidence did find you guilty, sir, of all charges. So, I also had the opportunity to review the presentence investigation [report], the victim impact statement that was submitted by [the victim's father], [and] the statement of the [victim's] mother that was read into court.
>
> ***
>
> So, your aggregate sentence here today, sir, is a minimum of 18 to a maximum of 36 years in a state correctional institution.

*Id.* at 37-39.

We find no abuse of discretion in the trial court's imposition of consecutive sentences. The record reveals the trial court imposed an individualized sentence consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and the community, and the rehabilitative needs of Appellant. 42 Pa.C.S.A. § 9721(b). The trial court gave ample reasons for imposing the sentences consecutively.

- 24 -

Although Appellant asserts his aggregate sentence is manifestly excessive since the charges allegedly rose out of the same criminal incident, we note Appellant is not entitled to a "volume discount" in the form of concurrent sentences. ***See Commonwealth v. Austin***, 66 A.3d 798 (Pa.Super. 2013). Rather, the imposition of consecutive sentences was within the trial court's discretion. ***Id.*** Thus, Appellant's final claim is meritless.

For all of the foregoing reasons, we affirm.

Affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/3/2022